Robert Andrew Brown and Bertha Evans Brown, Plaintiffs-Appellants, v. The County of Lake, a Body Politic and Corporate in the State of Illinois; William Clark, Jr., and Carolyn Clark, His Wife, and E. M. Melahn, Defendants-Appellees.

Gen. No. 65–31.

Second District.

January 24, 1966.

Rehearing denied February 14, 1966.

145

John F. Grady, Kaufman, Strouse, Wasneski & Yastrow, all of Waukegan, for appellants.

Bruno W. Stanczak, State's Attorney, and Thomas R. Doran, Assistant State's Attorney, Hall, Meyer, Fisher, Van Deusen, Holmberg & Snook, all of Waukegan, for appellees.

ALLOY, J.

This cause is before us on transfer from the Supreme Court of this State. The plaintiffs, Robert Andrew Brown and Bertha Evans Brown, filed a declaratory judgment action as against the defendant, County of Lake, and the defendants, William Clark, Jr. and Carolyn Clark, his wife, and E. M. Melahn. The Clarks own a farm located directly across Belvidere Road from the property of plaintiffs and have entered into a contract with defendant E. M. Melahn who intends to construct a cemetery on the Clark property after he has completed his purchase of the property. The Clark-Melahn property consists of about 70 acres located on the north side of plaintiffs' property and separated by State Route No. 120, a four-lane divided, limited access freeway. The Clarks and Melahn filed a petition for a special permit with the enforcing officer under the Lake County Zoning Ordinance. It was referred to the Zoning Board of Appeals which conducted a hearing on the petition and published notice thereof as required by the ordinance. Following this hearing in which plaintiffs participated as objectors, the Zoning Board of Appeals made a report to the County Board of Supervisors recommending that the permit be authorized. The County Board of Supervisors adopted a resolution authorizing issuance of the special permit on April 9, 1964.

Thereafter, plaintiffs filed their complaint for declaratory judgment in two counts. Count I alleges that plaintiffs' property will be substantially diminished in value by construction of the proposed cemetery on the premises across the road, without corresponding benefits to the public, and that the action of the County Board of Supervisors in authorizing the permit is, therefore, arbitrary, capricious and unreasonable. In Count II, the plaintiffs challenge the constitutionality of the entire

special use procedure of the Lake County Zoning Ordinance and contend that the ordinance contains no standards to guide the County Board in granting or denying permits and is, therefore, violative of the due process clauses of the State and Federal constitutions and the equal protection clause of the Federal constitution. Plaintiffs pray for injunctive relief as against defendants and also that the Lake County Board of Supervisors be permanently enjoined from issuing such permit for the use of the land as a cemetery and that a decree be entered that the issuance of the special permit was unlawful and void.

Motions to dismiss were filed by defendants.

In Count I of the complaint, plaintiffs allege that they reside on their property consisting of 342 acres upon which they conduct farming and husbandry operations; that since the adoption of the Lake County Zoning Ordinance in 1939, both plaintiffs' and defendants' property have been zoned in Classification "F"; that the highest and best use of plaintiffs' property is for residential farming purposes; that on April 9, 1964, defendants Clark and Melahn obtained from the Lake County Board of Supervisors a special permit authorizing the defendants to use their property for a cemetery and said defendants intend to use their land for such purpose. Attached to the complaint is a map showing the zoning of the area in question. This map shows that a special permit was issued to a Serbian Monastery to operate a cemetery on land adjoining plaintiffs' property on the southeast and there was also a special permit to the Gages Lake Sanitary District to operate a sewage treatment plant on land immediately adjoining defendants' land to the north. Immediately to the north of plaintiffs' property are two parcels of land zoned for general business.

The complaint further alleges that use of defendants' land will drastically change the character of the neighborhood, reduce the value of plaintiffs' land, and because

of damage to plaintiffs which far outweighs any benefit to the public, the action of the County Board of Supervisors in granting the permit is arbitrary and capricious. Count II of the complaint contains substantially the same allegations but seeks to have the special use provision of the Lake County Zoning Ordinance declared unconstitutional and void.

Under the terms of the Lake County Zoning Ordinances, one of the many permitted uses of land in the "F" classification is for cemeteries provided a permit is obtained from the Lake County Board of Supervisors. No such special permit is issued until after a public hearing is held before the Lake County Zoning Board of Appeals and action thereafter taken by the County Board of Supervisors as to the issuance of the permit. We are thus considering the question of authorization of a permitted use and the validity of the procedure which authorizes such special use rather than a change of zoning classification.

On appeal in this court, appellants contend that the "Special Use" provisions of the ordinance are entirely void in that they contain no standards to guide the action of the County Zoning authorities. Under the terms of the Lake County Zoning Ordinance, certain special uses, including cemeteries, are permitted in the "F" zoning district, but such special uses are subject to a special permit authorized by the County Board of Supervisors which "shall contain certain conditions governing the use requested" after compliance with the procedural regulations under the ordinance in obtaining such permit. Under the terms of the ordinance, an application for a special permit and the reasons in support thereof is required to be filed with the enforcing officer who is then required to submit it to the Zoning Board of Appeals for consideration and report to the County Board of Supervisors. It is further provided that a special permit shall provide for an annual inspection by the authorized

Lake County inspector to determine if conditions imposed by the County Board to govern the issuance of a special permit have been complied with. It is also provided that a special permit may be renewed annually upon receipt of an application and fee.

The ordinance likewise provides that no special permits shall be authorized by the County Board without a hearing before the Zoning Board of Appeals. Notice of the time and place of the hearing and publication in the newspaper of general circulation in the county and a hearing in the township affected are required and within a reasonable time after the hearing, the Zoning Board of Appeals is required to make a report to the County Board of Supervisors. There is no specific provision as to what should be contained in the report. After receiving the report from the Zoning Board of Appeals, the County Board of Supervisors either authorizes or refuses to authorize the issuance of the permit. There are no provisions limiting the County Board of Supervisors in its action in authorizing or refusing to authorize issuance of the permit.

The special permit procedure with which we are concerned in the instant case was considered by the Supreme Court of this state in Kotrich v. County of Du Page, 19 Ill2d 181, 166 NE2d 601. In that case, the ordinance was challenged on the ground that there is no statutory authority for the procedure of issuing special permits and that the Du Page County Ordinance did not establish specific standards by which the County Board of Supervisors is to judge whether a special permit should be granted. The Du Page County Ordinance likewise did not specifically delineate a set of standards to guide the County Board of Supervisors and, while there are variances in the language, the ordinances are fundamentally similar in character. The Supreme Court in determining that the Zoning Ordinance was not invalid, specifically stated (at page 187):

> "Since the Board of Supervisors is a legislative body, precise standards to govern its determination are not required."

A number of cases are cited by the plaintiffs where the courts have adhered to the contention that a failure to provide standards was sufficient to invalidate an ordinance, but it is notable that in none of the Illinois cases referred to, do the ordinances provide, prior to the issuance of a permit, that notice be published and a public hearing be held on the merits of the petition. It is apparent that the Lake County Zoning Ordinance, after requiring the procedure of a hearing after notice to parties, then vests with the County Board of Supervisors the right by legislative action, to determine whether a special permit should be issued. As indicated in the case of Kotrich v. County of Du Page, supra, such procedure by the legislative body does not violate constitutional provisions. There is no delegation of legislative authority to the administrative officer under the act.

██ A suggestion is also made that the Lake County Zoning Ordinance in its "Special Use" provisions goes beyond the scope of authority granted under the Enabling Act (Ill Rev Stats 1963, c 34, § 3151). The Supreme Court in Kotrich v. County of Du Page, supra, indicated (at page 186) that a residual category of special uses cannot, without distortion, be included in the customary classification and is permissible as a means of implementing the powers conferred by the statute. The inclusion of "special use" technique in ordinances has likewise been specifically affirmed in Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago, 25 Ill2d 65, 182 NE2d 722.

██ ██ A supplementary contention by plaintiffs is that the special use provisions of the ordinance are invalid in that they permit in a case such as is before us, the granting of a special use through a special permit which

does in fact change the zoning and creates improper "spot zoning." The purpose of the procedure for obtaining the special permit coupled with a hearing followed by legislative action, is to assure that the special use would be reasonably compatible with the character of the surrounding area. Cemetery uses are specifically provided for within the "F" zoning classification and there was no indication on the basis of the complaint and attached exhibits that the action of the County Board of Supervisors in granting the special permit would in fact result in unjustified "spot zoning." Such "Special Uses" have been specifically determined not to involve improper "spot zoning" in Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797.

██ In determining that the motion should be dismissed as to Count I, the trial court, as indicated in the written opinion, obviously considered that all well-pleaded allegations of the complaint were to be taken as true although conclusions of the pleader or conclusions or inferences drawn by the pleader not based upon fact were not to be so considered. This case is unique in that it is not the typical zoning case which comes before this court, since, in virtually all such cases, numerous witnesses and testimony are heard. In the present case, plaintiffs elected to stand by their complaint and exhibits and the motion to dismiss. Both parties concede that an owner of land complaining that corporate authorities have wrongfully permitted a use on the property of someone else must allege special damage or damage different from that suffered by the general public. We believe, however, that the allegations in the complaint of damage to the property of plaintiffs located directly across the road from defendants' property by use for a cemetery which would substantially reduce the market value of plaintiffs' property is a sufficient allegation of special damage within the scope of the case of Garner v. County of Du Page, 8 Ill2d 155, 133 NE2d 303.

■ It is contended by appellees that even admitting all of the allegations of the complaint, no facts are alleged which would overcome the presumption of validity which attaches to legislative action by the County Board. It is a well-established principle that there is presumption in favor of the validity of the issuance of the special permit and, even if the issue was fairly debatable, courts should not disturb such legislative action by the County Board. As stated in Bullock v. City of Evanston, 5 Ill2d 22, 123 NE2d 840, where there was a permitted variation in the zoned use of property to build an office building on a tract of land located in an area which was chiefly residential in character (at page 33):

> "Another principle of law which is fundamental is that the question of whether a variation of use should be granted is primarily one for the municipal authorities, and the courts will not overrule the legislative decision where the question is fairly debatable and the action of the municipal authorities is not arbitrary and capricious. There is the same presumption of validity in the enactment of a variation ordinance as there is in the original zoning ordinance. Kinney v. City of Joliet, 411 Ill 289, 292. It is not proper for this court to constitute itself a zoning commission and substitute its judgment for that of the legislative body charged with the primary duty of determining when a variation use should be permitted. Our proper inquiry is whether the question is debatable. If there is room for honest difference of opinion, the courts will not disturb the legislative action. Downey v. Grimshaw, 410 Ill 21, 28; Braden v. Much, 403 Ill 507, 515. Whether the variation of use bears a proper relation to the public safety, health and welfare is a question committed to the municipal authorities, and unless an abuse of discretion is clearly shown, the courts will not interfere. Forbes v. Hubbard, 348 Ill 166."

153

■ The presumption of validity could be overcome, where the evidence shows a destruction of property value in the application of the ordinance, and an absence of any reasonable basis in public welfare requiring the classification (Illinois Nat. Bank & Trust Co. of Rockford v. County of Winnebago, 19 Ill2d 487, 492, 493, 167 NE2d 401). The court in that case stated (at page 492):

> "In determining the validity of a given zoning restriction consideration is given to the character of the neighborhood, the existing uses and zoning of nearby property, the amount by which property values are decreased, the extent to which this diminution of value promotes the health, safety, morals or general welfare of the public, the relative gain to the public as compared to the hardship imposed on the individual property owner, the suitability of the subject property for the purpose for which it is zoned, and other relevant factors (Myers v. City of Elmhurst, 12 Ill2d 537). No one factor is controlling, each case must necessarily be considered on its own particular facts and circumstances. La Salle National Bank v. County of Cook, 12 Ill2d 40."

■ We agree that, on the basis of the pleadings, the record would disclose that the granting of the special use may be a fairly debatable question and that it is unlikely that the presumption of validity could be overcome on the basis of what is shown by the pleadings in this cause. Nevertheless, even though we are considering a case where the complaining party is not the owner of the property but is an adjoining neighbor complaining of the granting of a special use, the allegations of the complaint raise a sufficient question of fact to justify a hearing on the merits in this cause. The complaint alleges that the adjoining property of plaintiffs will be damaged and depreciated by the special use and likewise that there is no need for the cemetery

154

and no reasonable basis in public welfare for the granting of the special use. Since the determination of the validity of the ordinance is in part based upon the character of the neighborhood, the existing use of nearby property, the amount by which property values are decreased, the extent to which such decline in value promotes health, safety, morals or general welfare of the public, a balancing of the gain to the public as compared to the hardship imposed upon the property owners concerned, the suitability of the property for the purpose of a cemetery and many other relevant factors, none of which in itself is controlling, we feel it would be improper to sustain a dismissal of Count I on the allegations of the complaint before us. Under section 42(2) of the Civil Practice Act (Ill Rev Stats 1965, c 110, § 42(2)), no pleading is determined to be bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim which he is called upon to meet. It is, therefore, our conclusion that the Circuit Court of Lake County erred in sustaining the motion to dismiss as to Count I and that plaintiffs should have been permitted to proceed under the allegations of such count.

We, therefore, affirm the action of the Circuit Court of Lake County in allowing the motion to dismiss as to Count II but conclude that the court erred in allowing the motion to dismiss as to Count I. This cause is remanded to the Circuit Court of Lake County with directions to overrule the motion to dismiss as to Count I and proceed in this cause in accordance with the directions contained in this opinion.

Affirmed in part and reversed and remanded in part.

CORYN, P. J. and STOUDER, J., concur.