VERONA, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF WEST CALDWELL, IN THE COUNTY OF ESSEX, BOARD OF ADJUSTMENT OF THE BOROUGH OF WEST CALDWELL AND JOSEPH MARZIALE, BUILD-ING INSPECTOR AND ZONING OFFICER OF THE BOR-OUGH OF WEST CALDWELL, DEFENDANTS - APPEL-LANTS.

Argued March 21, 1967—Decided May 8, 1967.

276

Mr. *John J. McDonough* argued the cause for appellants (*Messrs. Darby & McDonough,* attorneys; *Mr. Andrew W. Kleppe* on the brief).

Mr. *Joseph A. Weisman* argued the cause for respondent (*Messrs. Hannoch, Weisman, Myers, Stern & Besser,* attorneys; *Mr. Joseph A. Weisman* and *Mr. Ralph M. Lowenbach* on the brief).

The opinion of the court was delivered by

PROCTOR, J.  This case arises under the zoning ordinance of the Borough of West Caldwell.  Plaintiff sought permission to extend its parking lot into an adjoining area zoned for residence and also sought a variance from the rear yard requirements applicable to its commercial building.  The Board of Adjustment after public hearing recommended approval of both requests.  The Mayor and Council by resolution denied both applications.  Plaintiff brought this action in lieu of prerogative writ challenging the denial of its requests.  However, at the pretrial conference the application for a variance from the rear yard requirements was expressly withdrawn.  The trial judge found for plaintiff and ordered

that plaintiff be granted a special exception for parking as requested. We certified the appeal to this Court before argument in the Appellate Division.

When the plaintiff made application to the Board of Adjustment it was the contract purchaser of some nine acres of land in West Caldwell, part of the tract being in a B-3 Highway Business District Zone fronting on Passaic Avenue near the intersection of that street and Bloomfield Avenue, and the remainder of the tract being in an R-3 Residence Zone. Plaintiff had received a building permit authorizing it to construct on its property in the Business Zone a large building designed for use as a Shop-Rite Market together with a lot designed to provide parking for 192 cars. Plaintiff desired to extend its parking lot 77 feet to the south and 100 feet to the east into the adjoining land which it owned that was zoned for residence use.[1] The residential land to the east which plaintiff wanted to use for parking was already bordered on its northerly side by a parking lot for a large shopping center which fronts on Bloomfield Avenue.

At the hearing before the Board of Adjustment, due notice of which had been given to interested parties, plaintiff offered testimony to support its request. A stenographic record was made of the proceedings. Section 601(d)(7) of the West Caldwell zoning ordinance reads:

"Parking areas for business use shall be permitted in adjoining residential zones for a distance not exceeding 100 feet, provided said area is contiguous to the lot upon which the main business building is located; and provided an application is made to the Zoning Board of Adjustment for a special variance and recommendation after hearing upon notice to adjoining property owners as provided by statute in such case made and provided."

The president of plaintiff corporation testified that the application was designed to meet the requirements of this

---

[1] At the time of the oral argument before this Court the supermarket had already been built and was in operation with the parking lot for 192 cars as authorized by the original building permit.

section.[2] The architect who designed the building gave his opinion that a supermarket of the size for which the building permit had been issued should have parking for some 330 cars as would be provided by the requested extension. He said that the smaller lot originally planned, though it might meet the legal minimum for issuance of a building permit, would cause congestion and back-ups in the lot and on the street. Plaintiff's next witness, an expert parking and traffic consultant, gave his opinion that the larger parking lot would not increase the number of cars coming to the market but would relieve traffic problems which would be caused by congestion because of the smaller lot. An expert city planner, who was acquainted with the zoning ordinances of West Caldwell, then testified that the proposed parking lot extension would not have any detrimental effect on the public good or to the intent and purpose of the zoning plan. Finally, a qualified real estate expert gave his opinion that the extension as proposed would not adversely affect the value of nearby residential property.

No expert testimony was presented to contradict the evidence offered by plaintiff. However, several persons owning property in the vicinity voiced their objection to the supermarket generally and to any extension of its effects.

The extension of the parking lot as proposed contained many factors designed to minimize the effects of the lot on adjoining property. Some of these factors were required by the zoning ordinance itself.[3] In addition, plaintiff agreed to

[2] The plans for the extension as submitted provide that the southeast corner of the extended lot would be adjusted so that no part of the lot would be more than 100 feet from the nearest part of the business zone.

[3] Section 601(d) reads in relevant part:

"Parking areas for non-residential uses permitted in the residential zones shall provide all the following requirements:

(1) The parking area must be surfaced with an asphalt, bituminous or cement binder pavment which shall be graded and drained to dispose of all surface water in such manner that it shall not discharge upon or over said adjacent residential property.

set aside as a buffer the last 50 feet of the 150 feet it owned in the residence zone to the east of its property in the business district. This buffer area would keep its trees and other growth in a natural state.

The Board of Adjustment found that under the proposed expansion the number of cars using the facilities would not be substantially increased; the flow of traffic on Passaic Avenue and inside the parking area would be substantially improved; and the amount of light and air surrounding the building would be increased. The board determined that the relief requested could be granted without substantial detriment to the public good and without substantial impairment of the intent and purpose of the Borough's zone plan and zoning ordinance because: 1) the zoning ordinance in section 601(d)(7) envisioned such parking areas in adjacent residential zones; 2) the proposed plan with its buffer area would not substantially affect property owners to the east; 3) the flow of traffic would be greatly improved; and 4) the 150 feet to the east of the Business District would be virtually unusable for any residential development. The board

(2) Any lighting in connection with off-street parking shall be so arranged as to reflect the light downward away from all adjoining residence buildings, residence zones or streets and all lights shall be extinguished by 10:30 P. M.

(3) The parking area must provide a six foot wood or wire fence landscaped with dense evergreen planting or a dense evergreen screening shrub at least six feet in height. Said fence and screening shrubs shall bound the parking area that is within the residential zone.

(4) The parking area must provide a concrete curbing or the equivalent at least 7 inches above the paving surface running parallel to the fence required above and at a distance of 5 feet from said fence.

(5) Such parking areas shall be used solely for the parking of passenger automobiles, and no commercial repair work or service of any kind shall be conducted on such parking lot. No sign, other than entrance, exit and condition of use signs, shall be maintained.

(6) Each entrance to and exit from such parking lot shall be at least 50 feet distance from any adjacent property located in any residence zone, and the location and design of entrances, exits, surfacing, landscaping, marking, and lighting shall be subject to the approval of the Planning Board to insure adequate relation to traffic safety and protection of the adjacent residence area."

recommended the approval of the application on conditions which, added to those conditions required by ordinance, would further minimize any effect the increased parking lot would have on the neighboring properties.[4]

The Mayor and Council by resolution denied the application of plaintiff as recommended by the Board of Adjustment. They based this denial on findings that the proposed extension would be an encroachment in an area zoned against such use and would be detrimental to the public good and the spirit, purpose and intent of the zoning plan and ordinance.[5] The defendants admitted by stipulation that the Mayor and Council in denying plaintiff's application did

---

[4] The additional conditions were:

"1. The unpaved area of 50 feet x 335.27 feet, otherwise referred to as "natural screening" as indicated on the plot plan dated August 12, 1965, shall be set aside to act as a buffer zone, preserving the trees and shrubbery which now exist, and to be maintained by the owner or lessee of the premises in an attractive manner.

The 6-foot high wood stockade fence shall be moved to the rear lot line, thus enclosing applicant's property on the eastern boundary line. A barrier shall be placed immediately east of the paved area in the rear of the premises so as to prevent access to this buffer zone by persons other than for maintenance purposes.

2. The entire southern boundary adjacent to the existing R3 residential zone shall have an 8-foot wide screen buffer area consisting of a 6-foot high wood stockade fence as presently indicated on said site plan, and concrete curbing with dense 6-foot high evergreen planting between the curb and the fence. The stockade fence shall not be set so close to the Passaic Avenue right-of-way so as to obstruct the vision of motorists."

[5] Their findings read:

"1) The use of the said premises now situate in the adjoining R3 residential zone district for the proposed purposes would be an invasion of a use in a district zoned against that use.

2) Applicant holds an existing building permit to erect the same approximate size building on the premises lying within the B3 highway business district, with adequate parking.

3) Extension of the business use in the adjoining residential zones will substantially increase the traffic in a highly developed residential area to the detriment of the residents of the adjoining residential zone.

4) No hardship to the applicant has been established or will accrue by reason of the denial of such use.

5) The premises located in the B3 highway business district zone can be used by applicant for business purposes without encroachment on the adjoining areas.

not predicate their determination on the testimony given at the proceedings before the Board of Adjustment and did not have available the transcript of those proceedings. They did not purport to take evidence in reaching their decision.

Plaintiff then brought the present action in lieu of prerogative writ in the Superior Court, Law Division. The trial judge determined that plaintiff's application to extend its lot was for a special exception and came under *N. J. S. A.* 40:55–39(b). The trial judge held that on the evidence presented to the Board of Adjustment the plaintiff was entitled to the relief requested under section 601(d)(7) of the zoning ordinance. He therefore set aside the decision of the Mayor and Council and ordered the building inspector of the Borough to issue a building permit to plaintiff to construct and use the proposed parking lot under the conditions set forth in the recommendation of the Board of Adjustment.

On this appeal defendants argue: 1) that plaintiff's request in substance was for a use variance and not a special exception under the zoning ordinance; and 2) even if it was a special exception, the Mayor and Council properly exercised their discretion in denying the application.

■■ The basic difference between a use which is a special exception and one which requires a variance is that the former is legislatively *permitted* in a zone subject to controls whereas the latter is legislatively *prohibited* but may be allowed for special reasons. See the comprehensive discussion of this distinction by Justice (then Judge) Hall in *Tullo v. Millburn Tp.,* 54 *N. J. Super.* 483, 490–491 (*App. Div.* 1959) ; see also Cunningham, "Control of Land Use in New Jersey," 14 *Rutgers L. Rev.* 37, 79–80 (1959), and 1 *Metzenbaum, Law of Zoning,* Ch. IX-f-2-b, 813–838 (*2d ed.*

---

6) Such encroachment on residential areas will adversely affect the character of the surrounding residential areas and diminish the value thereof.

7) Said use is detrimental to the public good and is not in keeping with the spirit, intent and purpose of the Zone Plan and Zoning Ordinance."

1955). The West Caldwell zoning ordinance in section 601(d) expressly authorizes parking lots in residence zones where the lot will service a contiguous commercial property and other conditions are met. The ordinance thus legislatively recognizes that parking lots may be a proper use of property zoned for residence. This legislative decision that a particular use is to be permitted in a zone subject to controls is a procedure authorized by *N. J. S. A.* 40:55–39(b). Plaintiff's request to extend its parking lot is therefore properly considered under the standards applicable to special exceptions to zoning ordinances. The inartistic term "special variance" appearing in section 601(d)(7) to describe the nature of the application does not negative the crucial fact that the use is legislatively permitted.

An applicant for a special exception must show that the requested exception can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance. *N. J. S. A.* 40:55–39. However, because the exception he requests has been legislatively sanctioned, his burden is much lighter than it would be if he sought a use variance. See *Tullo, supra,* 54 *N. J. Super.,* at *pp.* 496–497. Plaintiff in the present case provided ample expert testimony that these negative criteria would not be violated by the granting of the requested exception. No expert testimony was offered to refute these opinions. No expert or lay testimony even suggested that the 100-foot fringe of residential zone bordering a business district here involved was any less suitable for a contiguous parking lot than any other 100-foot fringe of residential zone bordering a business district located elsewhere in the Borough. The objections of neighboring property owners were directed more to the effects of the supermarket—for which a valid building permit had already been issued — than to any supposed detrimental effects which an extension of the parking lot would cause. Of course, those objections which were directed to the proposed rear yard var-

iance are no longer relevant as plaintiff expressly withdrew this request in the pretrial order.

An applicant also must supply evidence that his application conforms to all standards required by the zoning ordinance. Plaintiff's proof fully met these affirmative criteria, and it agreed to the further protective conditions imposed by the Board of Adjustment. No evidence challenged the showing of plaintiff that its application met the affirmative requirements of the zoning ordinance.

We therefore come to defendants' second contention: that the Mayor and Council had the authority to deny the application and properly exercised their discretion by a denial of plaintiff's application as recommended by the Board of Adjustment.

Under section 601(d) (7) the authority of the Board of Adjustment is limited to a "recommendation" of the application. By administrative practice in the Borough this language was taken to mean recommendation to the Mayor and Council for final approval. We are satisfied that this administrative practice is a reasonable and proper interpretation of the ordinance. A municipality may deny the Board of Adjustment power to approve by itself special exceptions and may limit the authority of the board to recommendations to the governing body for that body's final approval. *Schmidt v. Board of Adjustment of City of Newark,* 9 *N. J.* 405, 419–420 (1952).

Although the governing body by ordinance can be given the authority to review the determination of the Board of Adjustment and to make its own ultimate conclusions from the facts adduced before the board, it cannot make new findings of fact not based on the record made before the board. *Reinauer Realty Corp. v. Borough of Paramus,* 34 *N. J.* 406, 415 (1961); *cf. Tomko v. Vissers,* 21 *N. J.* 226, 236 (1956), and *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64, 75 (1952). The action of the Mayor and Council in the present case in attempting to decide plaintiff's application without predicating their determination on the record of the pro-

ceedings before the Board of Adjustment was an abuse of their authority and makes their denial a nullity.

The remaining question is whether we should affirm the judgment of the trial court or remand to the Mayor and Council so that they might exercise their proper function by deciding the application on the basis of the record made before the Board of Adjustment. As discussed above the Mayor and Council made seven "findings" to support their resolution denying plaintiff's application. Their "finding" in the nature of a legal conclusion that the parking lot would be "an invasion of a use in a district zoned against that use" is in flat contradiction to the language of section 601(d)(7) and plainly wrong. Their "findings" in the nature of factual conclusions contradict the uncontroverted testimony in the record and so could not validly be repeated on a reconsideration. Since we believe that on the record made before the board it would be arbitrary and unreasonable for the Mayor and Council to deny plaintiff's application, a remand to them would be an empty formality. Under similar circumstances our courts have ordered the relief requested by the applicant. *Nalitt v. Millburn Tp.,* 66 *N. J. Super.* 292, 303 (*Law Div.* 1961); *cf. Griggs v. Zoning Bd. of Adjustment of Borough of Princeton,* 75 *N. J. Super.* 438, 448 (*App. Div.* 1962). We do so here.

For the foregoing reasons the judgment of the trial court is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For reversal* — None.