[No. 146-2.    Division Two.    May 21, 1970.]

GARY D. LUND, *Appellant,* v. THE CITY OF TUMWATER *et al.,* *Respondents.*

*Brodie, Fristoe & Taylor* and *Theodore D. Schultz,* for appellant.

*Lynch & Lynch* and *Neil J. Lynch,* for respondent City of Tumwater.

*Blair, Thomas, O'Hern & Daheim* and *Dale L. Carlisle,* for respondent United Homes Corporation.

PEARSON, J.—This is an appeal from an order quashing a writ of certiorari and sustaining certain zoning actions taken by the City of Tumwater.

The dispute began when the City of Tumwater was petitioned on January 29, 1969 to annex an area of approxi-

mately 2½ acres. The petition requested that the annexed area

[B]e zoned R-1 [residential] with a special use permit to construct a planned unit development, not to exceed 14 multi-family units per acre. Development and construction to be in accordance with the plans and layouts attached to this application and made a part thereof.

The petition was signed by the owners of the property and by a representative of United Homes Corporation, the builder of the proposed development and the intervenor herein.

The petitioners also requested that the city grant a special use permit on 7½ acres in Tumwater adjacent to the area to be annexed. The 7½ acres itself was zoned R-1 and it was surrounded on three sides by property zoned R-1. The zoning classification R-1 is strictly residential in nature, allowing 1 and 2-family dwellings, parks and libraries. There are minimum requirements for yard size and site area.

The proposed development was to encompass 20 acres. Ten acres, the easterly one-half, were in Olympia, and 10 acres (including the 2½ acres to be annexed) were to be in Tumwater. The 10-acre section of the development in Olympia was later stricken from the plan and is not relevant to this appeal, except insofar as the reduction in the size of the development reduced its population and its impact on the surrounding area. The development was to consist of single-story duplexes and 2-story eightplexes. The total number of units would be approximately 130, with a density of about 13 units per acre.

The City Council of Tumwater is also the municipal zoning authority. The matters of the annexation and special use permit were treated together by the city council. The issue first came up for discussion at the city council meeting of February 4, 1969. The council referred the matter to the city planning commission for their recommendation. A public hearing was also set on the matter for March 4, 1969.

Notice of the public hearing on the annexation was

posted and published. The opponents of the proposed development were present at several city council meetings[1] when the development was discussed. Opponents were also present to voice their objections to the planning commission at its meetings on February 25 and March 25, 1969. They also presented petitions signed by many people opposed to the development. The opponents objected to the development on the basis that the population increase would create problems of traffic congestion, overloaded utilities, overloaded schools, and diminution of property values.

As a result of the meeting of March 25, 1969 and the negative report of the Thurston Regional Planning Commission, the city planning commission decided to recommend that the petition for annexation and the request for special use permit should be denied unless modified to meet their recommendations. It submitted its recommendations to the city council by letter on March 27, 1969.

The objections of the planning commission were that the size and density of the proposed development were too much for the area in which it was to be located. The commission suggested that the density of the development be lowered and that the design be altered to conform with single-family development of the surrounding area.

In spite of the objections of the opponents and of the planning commission, the city council approved the 10-acre planned unit development. On April 15, 1969 the council passed ordinance 546 which annexed 2½ acres into the city, zoning it R-1, and simultaneously granted a special use permit for the proposed development within the area annexed. Immediately thereafter, a resolution was adopted, granting a special use permit on the 7½ acres zoned R-1 already within the city. The vote on both these measures was 4 to 3. Ordinance 546 incorporated into it plans, layouts and a letter of commitment from United Homes, describing the development.

Very soon after the city council action, the appellant

---

[1]February 4, March 4, March 18, April 1, and April 15, 1969.

here, Gary D. Lund, who lives near the proposed development, petitioned the Superior Court for Thurston County to issue a writ of certiorari to review the action of the city council. After a show cause hearing, the trial court ordered the issuance of a writ of certiorari. The records of the city council proceedings regarding the development were certified to the superior court.

Hearings on the writ were held and the parties presented oral argument. The appellant attempted to call the Mayor of Tumwater as a witness to determine whether secret meetings or executive sessions had been held with representatives of United Homes before the adoption of ordinance 546. The court refused to permit the introduction of that evidence.

The trial court concluded that all the proceedings were procedurally and substantively proper and that the ordinance and resolution should stand. The court entered findings of fact and conclusions of law. Judgment was entered quashing the writ of certiorari and sustaining the action of the city council.

Several assignments of error are made on appeal challenging findings of fact, and it is contended that the trial court erred in denying appellant's right to call as a witness the mayor of Tumwater. Because of our disposition of the main issue in the case, we do not deal with those questions. The main challenge is that the city council's actions in granting of the special use permit were not procedurally and substantively proper. No challenge is directed to the annexation of the 2½ acres.

In issuing the special use permit with respect to the 7½-acre tract, the city council presumably relied upon section 21(2) of ordinance 456, which provides:

> Furthermore, recognizing that there are certain uses of property that may, or may not, be detrimental to the public health, safety, morals and general welfare, depending upon the facts of each particular case, the Council may issue permits for such uses after considering the Planning Commission's recommendation for approval or denial. The Council may place in such permits conditions

or limitations in its judgment required to secure adequate protection to the zone or locality in which the use is to be permitted after consideration of the recommendation of the Planning Commission, for any violation of the terms or limitations therein prescribed. Notice of the hearing of such termination shall be given to the persons, firms or corporations involved, as to time and place, by registered letter or certified mail only.

The appellant's central argument is an attack upon the city council's action in avoiding prior zoning restrictions by granting a "special use permit." The appellant claims that the section quoted above must be read in conjunction with other specific sections of ordinance 456 which authorize certain special permits with regard to specific land use classifications. If section 21(2) is read so as to empower the city to disregard all existing zoning classifications, appellant claims that the provision is improper zoning legislation. We agree.

■ A "special permit" (or "special use permit" or "special exception") authorizes a use which is permitted by zoning regulations subject to approval by the administrative body charged with issuing such permits. 3 R. Anderson, American Law of Zoning, §§ 15.01, 15.02 (1968); 1 E. Yokley, Zoning Law and Practice, § 7-6 (3d ed. 1965); 2 E. Yokley, Zoning Law and Practice, §§ 15-1, 15-4 (3d ed. 1965).

It is apparent from the definition above, from the treatises cited and from many cases, (see *State ex rel. Pruzan v. Redman,* 60 Wn.2d 521, 374 P.2d 1002 (1962); *Stacy v. Montgomery County,* 239 Md. 189, 210 A.2d 540 (1965); *Verona, Inc. v. Mayor & Council of Borough,* 49 N.J. 274, 229 A.2d 651 (1967); *McNalley v. Zoning Bd. of Review,* 102 R.I. 417, 230 A.2d 880 (1967)), that a special permit may be granted only for uses specifically authorized by the zoning legislation.

Section 21(2) standing alone is not a proper authorization for a special permit outside of those specifically listed in various subsections of ordinance 456. There is no authorization in the ordinance for a special permit encompassing

developments of the type proposed here, and granting the special use permit was, therefore, beyond the power of the Tumwater City Council.

■ The intervenor asserts that because the city council has retained the authority to issue special permits, the issuance of a special permit is a legislative act. However, every act of a legislative body is not a legislative act. Even though there is contrary authority (*Brown v. Lake,* 67 Ill. App. 2d 144, 213 N.E.2d 790 (1966)), it is generally held that the granting of a special permit is an administrative or quasi-judicial act, whether done by the city council or by an administrative body. *Essick v. Los Angeles,* 34 Cal. 2d 614, 213 P.2d 492 (1950); *In re Clements' Appeal,* 2 Ohio App. 2d 201, 207 N.E.2d 573 (1965); 3 R. Anderson, American Law of Zoning, § 15.10 (1968).

Respondent and intervenor cite *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955), as authority that the city council action was legislative in character. That case holds that when county commissioners act pursuant to a statute relating to zoning, they are exercising legislative powers. We agree that when county commissioners establish or amend county ordinances pursuant to the state enabling statutes (RCW 36.70 *et seq.*) they act as legislators. The same is true of a city council which establishes or amends zoning ordinances, pursuant to RCW 35.63.080 *et seq.* and RCW 35.63.120.

However, when a city council purports to act pursuant to its own zoning ordinance to issue special use permits, it is not legislating, but is acting in its administrative capacity.

The city has broad legislative powers when it adopts or amends zoning classification. *Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969). But the authority to issue special permits must be controlled by adequate standards, whether it is vested in legislative or administrative bodies. 3 R. Anderson, American Law of Zoning, § 15.10 (1968).

To uphold the action of the Tumwater City Council here would be to sanction the abandonment of procedures re-

quired by the ordinance for amendment or rezoning. The council would have the ability to grant "special permits" for an infinite variety of uses without even the requirement of a public hearing—a greater administrative power than that given to legislatively amend the ordinance. *See* RCW 35.63.120. The ordinance permits special uses in certain districts. No other deviations by "special use" are authorized.

By authorizing whatever "special uses" the city council may see fit without the requirement of a public hearing, section 21(2) empowers the city council to administratively amend the ordinance without subjecting itself to the statutory requirement of a public hearing when a comprehensive zoning plan is amended or modified. RCW 35.63.120. Because it purports to permit modification of a zoning plan by administrative action, section 21(2) of Tumwater ordinance 456 is invalid.

To paraphrase the Superior Court of Rhode Island in *McNalley v. Zoning Bd. of Review, supra,* if a development of the type here proposed is to be allowed in an R-1 district, provision for such use as a permitted use by way of special exception must be made by the city council by amendment of the ordinance and not by quasi-judicial fiat.

The intervenor has argued that the actions taken by the city council could qualify as a rezone by amendment of the zoning ordinance. Section 26 of ordinance 456 sets forth the methods for amendments to the ordinance, and the ordinance can be amended only by ordinance. The resolution granting the special use was certainly not an ordinance and does not constitute an amendment to the basic zoning ordinance.

Accordingly, the order quashing the writ of certiorari is vacated and the special use permit granted by resolution with reference to the 7½ acres is set aside. The special use permit granted as a part of the annexation ordinance is a legislative action and therefore not invalid for the same reason. However, that 2½-acre tract annexed was a portion of a planned unit development. Where three-fourths of that unit development cannot be accomplished within the exist-

ing zoning restrictions, the remaining one-fourth must also be disallowed. The 2½-acre annexation and the R-1 zoning are valid. The records certified are ordered returned with the remittitur.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied July 3, 1970.