[No. 251-41287-1. Division One—Panel 2. February 1, 1971.]

R. G. SHARNINGHOUSE et al., *Respondents*, v. THE CITY OF BELLINGHAM, *Defendant*, JAMES F. BOLSTER, *Appellant*.

*Livesey, Kingsbury & Livesey* and *Derril T. Bastian,* for appellant.

*Sam Peach, Hodge, Dahlgren & Hillis, Inc., P.S.,* and *Jerome L. Hillis,* for respondents.

WILLIAMS, J.—James A. Bolster, as intervenor, appeals from a decree of the superior court reversing the decision of the Bellingham City Council and its planning commission to issue him a conditional use permit for the construction of a 60-unit apartment house within the city.

The facts relevant to a consideration of the issues presented are not in dispute. In 1947, the proposed apartment house location was zoned R-S for single-residence dwellings. The portion of the zone in question consisted of a rather narrow strip along the side of a hill with Western Washington State College uphill and an industrial zone at the bottom of the hill along the shores of Bellingham Bay. The neighborhood contained a number of large, old-style homes and one nonconforming use, a hospital which was situated upon a 3-acre tract. In 1966, appellant, James A. Bolster, acquired the hospital property and applied to the city of Bellingham for a different zone designation so that he might convert the building into an apartment house. The city council, acting on the advice of its planning commission, rezoned the property from R-S to R-1, which was also residential, but which permitted apartments and other structures upon the issuance of a conditional use permit by the city planning commission. A conditional use permit was issued to appellant, who then converted the hospital building into apartments. No objection was registered at this time.

July 10, 1967, the city, acting pursuant to RCW 35.63, adopted its official comprehensive plan which affirmed the residential, single-family classification of the area without excepting appellant's property located therein.

In December, 1967, appellant applied for and was granted a conditional use permit by the city planning commission for a new 60-unit apartment to be constructed adjacent to the former hospital building and upon the same tract. A group of citizens, respondents here, living in the immediate vicinity, appealed to the city council which, although voting four to three to deny the permit, affirmed the issuance thereof because of a provision in the zoning ordinance requiring a three-quarter vote of the council to reverse a decision of the planning commission. The superior court took jurisdiction by certiorari, considered the case without testimony upon the basis of the documents certified, and entered findings of fact that the issuance of the conditional use permit for the construction of the 60-unit apartment on the property was "not in accordance with the comprehensive plan, but was for mere private gain and not for the benefit of the community as a whole," and a conclusion of law that the action "was spot zoning and is arbitrary and capricious and therefore void." Judgment was entered accordingly. This appeal followed.

█ In view of the fact that the record consists of written and graphical materials with no oral testimony introduced, our consideration of the case is not bound by the trial court's findings. *Smith v. Skagit County,* 75 Wn.2d 715, 453 P.2d 832 (1969).

█ Appellant's effort to gain permission to build an apartment upon the hospital site commenced with his petition to the city council for the rezone of the property to an R-1 classification. This petition was regularly considered by the planning commission and the council and an appropriate ordinance was adopted making the rezone. The enactment of this ordinance was a discretionary exercise of police power by the legislative authority of the city and cannot be reviewed by the courts except for manifest abuse,

which is usually characterized as arbitrary and capricious conduct. The burden of proving such arbitrary and capricious conduct was upon respondents. *Farrell v. Seattle,* 75 Wn.2d 540, 452 P.2d 965 (1969); *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 422 P.2d 790 (1967). There is no proof of any kind in the record that the council in adopting the rezone ordinance was acting arbitrarily or capriciously. The ordinance is therefore valid.

 The second stage began in December, 1967, with appellant's application for the conditional use permit to construct the 60-unit apartment. The ordinance in effect at that time provided that the permit should issue if the planning commission determined that certain density requirements were met and that the use of the land would "not be unduly detrimental to adjacent and surrounding property." There was conflicting evidence before the commission as to whether the proposed apartment would be unduly detrimental to the surrounding area. The commission found that it would not be, and we cannot interfere with that decision because of the rule found in *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955) at 633:

> Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. *In re Buffelen Lbr. & Mfg. Co.,* 32 Wn. (2d) 205, 208, 201 P. (2d) 194 (1948), and case cited.

*Accord, State ex rel. Myhre v. Spokane, supra; Burnham v. Board of Appeals of Gloucester,* 333 Mass. 114, 128 N.E.2d 772 (1955).

 Respondents challenge the power of the planning commission to issue the conditional use permit because the statute does not specify that this is one of its functions and, secondly, because the standards established as guides for the commission were inadequate. *Lund v. Tumwater,* 2 Wn. App. 750, 472 P.2d 550 (1970) decided that an administra-

tive body other than a board of adjustment as defined in the zoning statutes (RCW 35.63.080 *et seq.*, and RCW 35.63-.120) may be authorized to issue such permits. Moreover, RCW 35.63.020 permits cities of the first class operating under a self-government charter to extend the powers of the commission beyond those listed in the chapter.

Standards similar to the ones in this case are to be found in *State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 384 P.2d 358 (1963). There, the application was for a permit to install an asphalt plant in a residential district. The guidelines were that the area be undeveloped, the equipment temporary, and that the use would *"not be unduly detrimental* to the existing, developing or projected use of land in the surrounding area." The Supreme Court held at page 608 as follows:

> [T]he commission does have the power to issue a conditional use permit for the operation of an asphalt processing plant, provided that the area in question is *undeveloped* and that the proposed *temporary* equipment *will not be unduly detrimental* to the existing, developing or projected use of land in the surrounding area.
>
> These are questions of fact which have to be resolved by the authorities that administer the act.

*See Burnham v. Board of Appeals of Gloucester, supra; Hiscox v. Levine*, 31 Misc. 2d 151, 216 N.Y.S.2d 801 (1961); *National Maritime Union of America v. Norfolk*, 202 Va. 672, 119 S.E.2d 307 (1961); 2 E. Yokley, Zoning Law & Practice, § 15-6, at 146 (3d ed. 1965).

In short, we hold that the rezone action of the council was valid and that in issuing the conditional use permit the commission acted within its powers. It was a debatable decision made upon conflicting evidence and therefore is not subject to judicial interference. *Farrell v. Seattle, supra; State ex rel. Myhre v. Spokane, supra.*

Two questions remain. The first is that subsequent to the rezone, but prior to the application for the conditional use permit, the city council enacted its official comprehensive plan. The commentary with which we are concerned in the plan suggested multiple-dwelling use for the land in ques-

tion. The Land Use Map of the plan, however, depicted the use as single-dwelling residential. In granting the permit, the commission thus acted contrary to a significant part of the plan.

■ The function of a comprehensive plan is described in *Shelton v. Bellevue*, 73 Wn.2d 28, 435 P.2d 949 (1968) at 35:

> And, since it [comprehensive plan] usually proposes rather than disposes, it does not ordinarily, without further regulatory implementation, in and by itself, impose any immediate restrictions upon the land area it purports to cover. Planning, as such, then in effect forms a blueprint for the various regulatory measures it suggests.

It should be remembered that at the time of the application for the conditional use permit, valid and subsisting ordinances of the city established in the applicant a right to use the land for an apartment if the density and "unduly detrimental" tests passed to the satisfaction of the commission. The comprehensive plan did not supersede the ordinances. It was a blueprint for the city council to use in formulating a new zoning ordinance for the city. Until the new zoning ordinance came into being, the older, unrepealed ordinances were the law of the city and controlled the activity of the planning commission. RCW 35.63; *Shelton v. Bellevue, supra.*

■ The second problem is raised by the fact that on appeal from the planning commission to the council, the council voted four to three to reject the application, but because of a requirement that there be a three-quarters majority vote to overturn the commission's decision, the action of the commission was affirmed. If the council had been acting under its general powers, the point might be well taken. However, the council was acting pursuant to the zoning ordinances then in effect which empowered it as an administrative body to perform certain zoning functions under specified conditions, one of which was the voting requirement. When a city council is constituted in this special way, to act in an administrative capacity, it must abide by the conditions of the enabling ordinance. *Lund v.*

*Tumwater, supra.* Respondents cite no charter, statute, or constitutional provision, and we know of none, which would restrict the city council, as the legislative body with general powers, to constitute itself an administrative body with certain voting restrictions. The requirement that the decision of an administrative body be by more than a majority vote is not unusual. *See* 3 R. Anderson, American Law of Zoning, § 16.45 (1968). Respondents refer to section 79 of the Bellingham City Charter, providing that a majority vote of all members of the city council shall be sufficient to adopt any ordinance. The action taken here was not the adoption of an ordinance, but rather administrative review.

The judgment is reversed.

HOROWITZ, A. C. J., and UTTER, J., concur.

Petition for rehearing denied March 30, 1971.

Review denied by Supreme Court May 6, 1971.