9 Wn. App. 973 (1973)
516 P.2d 775
EVERGREEN STATE BUILDERS, INC., et al., Appellants,
v.
PIERCE COUNTY et al., Respondents.
No. 961-2.
The Court of Appeals of Washington, Division Two.
November 19, 1973.
E. Albert Morrison and Kenneth S. Kessler, for appellants.
Ronald L. Hendry, Prosecuting Attorney, Keith M. Black, Special Deputy, and Richard F. DeJean, for respondents.
PEARSON, C.J.
The Board of County Commissioners of Pierce County granted an unclassified use permit to Tacoma Rifle and Revolver Club, establishing it as a conforming use in a suburban residential zone. This appeal is taken from a judgment dismissing a petition for a writ of certiorari and sustaining the action of the board.
The Tacoma Rifle and Revolver Club (club) occupies an irregularly shaped 70-acre tract of wooded land in University Place, Pierce County. The club maintains open-air rifle and pistol ranges on a portion of this land; it has operated these facilities on the site since shortly after the turn of the century. Since the passage of Pierce County zoning ordinances in 1956 and 1962, which denominated the general area as a suburban residential zone, the club has continued its operation as a legal preexisting nonconforming use.
The appellants are separate developers of land adjoining *975 the club's property. Evergreen State Builders, Inc. owns land abutting on the west; that of Kelley, Melby and Pease, Inc. lies to the east. Both tracts are in an advanced state of residential development and use.
The present dispute began in December of 1969 when the club petitioned the Pierce County Planning Commission for an "unclassified use" permit, which would establish its existing operation as a conforming use and allow the construction of certain improvements to its facilities. The planning commission recommended denial of the application to the Board of County Commissioners. That body summarily denied the application, in accordance with its established procedures. Appeal by the club from the summary denial brought the application on for hearing on the merits before the board. On February 24, 1970, after a public hearing, the board approved the application and granted the permit.
This action was subsequently voided by judgment of the superior court for a procedural defect in the proceedings before the board. The defect was thereafter cured, and a further hearing was held before the Board of County Commissioners on November 9, 1971. Again the permit was granted. Appellants petitioned the superior court for a writ of certiorari to review that action. Upon a reading of the hearing records, the trial court sustained the issuance of the permit.
Pursuant to an order entered by the trial court, the certified records of both hearings before the board were consolidated, and both are before us on appeal.
Appellants' principal contentions are first, that the Board of County Commissioners acted beyond its power in granting the unclassified use permit to the club, and second, that its action was arbitrary and capricious.
Important to a determination of the first issue is a proper characterization of the capacity in which the Board of County Commissioners acted in granting the permit. Respondents contend that the board was acting in a legislative capacity. They argue that since the county legislative body has in this case retained the authority to issue certain use *976 permits, its action in granting them is necessarily a legislative act, and they cite Lillions v. Gibbs, 47 Wn.2d 629, 289 P.2d 203 (1955) for the proposition that when county commissioners act pursuant to a statute relating to zoning, they are exercising legislative powers.
[1] We disposed of a similar assertion in Lund v. Tumwater, 2 Wn. App. 750, 755, 472 P.2d 550 (1970). As we said in that case:
We agree that when county commissioners establish or amend county ordinances pursuant to the state enabling statutes (RCW 36.70 et seq.) they act as legislators. The same is true of a city council which establishes or amends zoning ordinances, pursuant to RCW 35.63.080 et seq. and RCW 35.63.120.
However, when a city council purports to act pursuant to its own zoning ordinance to issue special use permits, it is not legislating, but is acting in its administrative capacity.
In the present case, the Board of County Commissioners purported to act pursuant to those provisions of the Pierce County zoning code which define and specify permissible "unclassified uses." Lund v. Tumwater compels the conclusion that in so acting, the board was exercising administrative, rather than legislative powers. Furthermore, since Lund v. Tumwater was decided the Supreme Court has squarely held that the act of a county legislative body in issuing an unclassified use permit pursuant to ordinance is administrative in nature. Durocher v. King County, 80 Wn.2d 139, 492 P.2d 547 (1972).
[2] This distinction has this significance to the present case: whereas the county commissioners have very broad legislative powers when they adopt or amend zoning classifications, the authority to issue special permits must be controlled by adequate standards, whether it be vested in legislative or administrative bodies. Lund v. Tumwater, supra; 3 R. Anderson, American Law of Zoning, § 15.10 (1968); see also Sharninghouse v. Bellingham, 4 Wn. App. 198, 480 P.2d 233 (1971).
*977 Accordingly, while the Board of County Commissioners has the power to authorize a change in land use administratively via the unclassified use permit, that authority is limited to the specific uses and standards denominated in the pertinent zoning code section. Lund v. Tumwater, supra; Durocher v. King County, supra.
Article 22 of the Pierce County zoning code provides, in part:
UNCLASSIFIED USES

Section 2200: The following uses are found to possess characteristics relating to their size, numbers of people involved, the traffic generated, and their immediate impact on the area which makes impractical their being identified exclusively with any particular zone classification as herein defined. In order to determine that the location of these uses will not be unreasonably incompatible with uses permitted in the surrounding areas; and to permit the Planning Commission to make further stipulations and conditions as may reasonably assure that the basic intent of this Resolution will be served, these uses will be subject to review by the Planning Commission and the Board of County Commissioners and the issuance of an Unclassified Use Permit.
(Italics ours.)
An enumeration of uses follows this preamble. Among the permissible unclassified uses set out is: "(4) Commercial establishments or enterprises involving large assemblages of people or automobiles, such as ... h. Recreational centers privately operated." Respondents contend that the club's use comes within the terms of this subsection, and that the action of the board in granting the permit was thus within the scope of its administrative authority. We agree.
The testimony and other evidence before the board demonstrated that the club, in addition to conducting firing range activities, sponsors and hosts picnics, highland games, and other activities open to the general public. It is apparent under the facts adduced before the board that the club can properly be characterized as a privately operated recreational *978 center. It follows from the language of the ordinance that it is properly the subject of an unclassified use permit.
Appellants argue, however, that despite this characterization the club cannot properly be issued an "unclassified use" permit because "gun clubs" constitute a classified use under another section of the zoning code.[1] They base this contention on article 2, section 203 of the zoning code, the section pertaining to rules of construction and definitions, in which the following definition of "unclassified use" is found:
"Unclassified use" means a use possessing characteristics of such unique and special form as to make impractical its being made automatically and consistently permissible in any defined classification or zone as set forth in this resolution.
The essence of this assertion is that, in light of this definition, uses which are specifically permissible under particular sections of the zoning code cannot constitute "unclassified uses," and that accordingly it is beyond the administrative power of the board to grant a permit concerning such a use.
[3] We are not persuaded by this argument. It is apparent from the quoted language of article 22 of the code that unclassified use permits may be issued for enumerated uses whose characteristics make impractical their exclusive identification with particular zone classifications.[2] It is thus clear that any specific classification of a particular use is not exclusive, where such a use comes also within the terms of article 22.
Moreover, any inconsistency between article 22 and the *979 article 2 definition of "unclassified use" can be resolved by the very broad rule of construction set out at article 2, section 200: "Articles and section headings contained herein shall not be deemed to govern, limit, modify, or in any manner affect the scope, meaning or intent of any section hereof." It is manifest that the purpose and intent of article 22 is thus unconstrained by any definition placed upon its heading, "unclassified uses."
Accordingly, we are of the opinion that the permit in this case was issued in accordance with the standards set out in the zoning code, and thus that the action was within the board's administrative power. Durocher v. King County, supra.
[4] Nor can we interfere with the board's decision upon the merits, absent arbitrary and capricious conduct on its part. Lillions v. Gibbs, supra; State ex rel. Cosmopolis School Dist. 99 v. Bruno, 59 Wn.2d 366, 367 P.2d 995 (1962).[3] Such conduct has been defined:
Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.
Lillions v. Gibbs, supra at 633. See also Sharninghouse v. Bellingham, supra.
After two public hearings, where full opportunity was given to all sides to present views and evidence, the Board of County Commissioners in this case found:
This is a use of land which at first glance would seem to be incompatible with surrounding residential areas. However, the facts presented to this board establish that the use can and will be compatible to the surrounding community, that the potential for obnoxious noises will be greatly reduced and that the safety features of this range *980 will be greatly enhanced. In addition this facility will fill a recreational need in the community in a manner which is compatible with the surrounding neighborhood. Lastly, this Board recognizes that if this use were not permitted to exist in a residential area the end result is that in a total urbanization of this kind all recreation would be excluded because no property could be used in such a manner. The Board does not feel that the urbanization of society should be permitted to destroy kinds of recreation, such as in the instant case. Of course, the Board recognizes the recreation must be controlled in such a manner that it does not constitute a menace to others. All the facts presented to the Board in the instant case show that the land in question will in fact be controlled to a degree that it will not be a menace to surrounding property owners.
Moreover, the board had reason to believe that the club would not undertake the expense of salutary improvements on the strength of a mere variance, and that issuance of the permit was necessary to secure them.
These considerations and findings evidence the opposite of "willful and unreasoning action ... in disregard of facts or circumstances." Lillions v. Gibbs, supra.
[5] Appellants finally contend that the board's action constituted "spot zoning," inherently arbitrary and capricious. The granting of an unclassified use permit, though it may effect a change in land use, is not "zoning." Durocher v. King County, supra. Thus it cannot consitute "spot zoning." 3 R. Anderson, American Law of Zoning § 15.04 (1968).
Judgment affirmed.
PETRIE and ARMSTRONG, JJ., concur.

*1001 UNREPORTED OPINIONS
Each of the appeals listed below has been disposed of by formal written opinion in the manner indicated. While printed publication has been withheld pursuant to RCW 2.06.040, the opinions are on file as a public record in the office of the Clerk for the Division of the Court of Appeals concerned.
NOTES
[1] Article 16 of the zoning code, "FR-Forestry and Recreation" includes "Hunting and fishing camps and gun clubs," as specifically permissible uses.
[2] We note in this regard that there are several enumerated uses under article 22 which correspond to uses specifically classified under other sections of the zoning code. Among them are rock crushing operations (a classified use under article 1201.2(38)) and rest homes (retirement homes, 601.1(6)).
[3] Appellants contend that the standard of review provided in the administrative procedure act (RCW 34.04) should apply. However, the board, not being a state agency, is not subject to the act. State v. Board of Valuation, 72 Wn.2d 66, 431 P.2d 715 (1967).