[No. 1083-2.    Division Two.    March 11, 1975.]

JOHN G. GERLA, *Respondent*, v. THE CITY OF TACOMA,
*Appellant.*

884

*Robert R. Hamilton, City Attorney,* and *William J. Barker* and *F. H. Chapin, Jr., Assistants,* for appellant.

*Alan Rasmussen,* for respondent.

PEARSON, J.—The City of Tacoma appeals an adverse judgment in a suit brought by plaintiff, John G. Gerla, claiming inverse condemnation arising out of an action by the City's Planning Commission.[1]

The primary issue raised on appeal is whether or not a condition attached to the issuance of a special use permit granted to plaintiff's tenant, Mobil Oil Corporation, was a valid exercise of the City's police power.

Answer to the primary issue necessitates a consideration of the following questions:

(1) Did the City have statutory authority to impose the condition?

(2) Did the City's ordinance authorize imposition of the condition?

(3) From a factual standpoint, was the condition reasonably necessary to accomplish the legislative purpose, or on the other hand, was it unreasonably burdensome to the plaintiff under the circumstances?

---

[1] Plaintiff was at all times a member of the Planning Commission of Tacoma, but took no official part in the actions of that commission which are at issue in this case.

The facts giving rise to the controversy may be summarized as follows. Plaintiff owned a parcel of real property on the southwest corner of East 72nd Street and Portland Avenue in the city of Tacoma. He negotiated a lease with Mobil Oil Corporation for the latter to erect and operate a gasoline service station. The trial court found that plaintiff was aware that before the City would allow construction of a service station at that location it would probably require a dedication to the City of 6 feet of the property abutting South 72nd for a length of 138 feet and another strip 12 feet in width for a length of 124 feet abutting on Portland Avenue. The required dedication would permit the widening of both major arterial streets to accommodate anticipated increases in the volume of traffic, would allow for the addition of right and left turn lanes at the intersection, and would also provide space for the construction of sidewalks and curbs.

Plaintiff was aware of the probability of these requirements, since the Planning Commission, of which he was a member, had imposed like conditions upon other service stations in other areas as well as upon other businesses in the area involved. The preliminary lease with Mobil Oil Corporation took into account the probability of this type of condition.

The property involved was located within a C-2 (commercial zone) and consequently eligible under Tacoma's zoning ordinance for use as an automobile service station. However, because of the hazardous nature of this type of business, another city ordinance (No. 18628) required a prospective applicant to obtain a special use permit and to comply with detailed development standards. Section D (1) of Tacoma Ordinance No. 18628 is part of a provision setting standards for service station development, and that section itself provides for a minimum lot size for service stations "after dedication of all required street right of way."

Mobil Oil Corporation's representative formally applied to the Planning Commission for the special use permit.

Following a hearing in which testimony was taken, the commission determined to issue the permit on the condition, among several others not in controversy, that plaintiff dedicate the two strips of property so that the two streets could be widened and sidewalks and curbs installed.

At this point the plaintiff entered into an oral stipulation with the City which departed from the normal procedure of appealing the condition to the City Council and from there to the superior court. The City Attorney advises us that to accommodate plaintiff in his desire to proceed with development of the service station and to accommodate a test case on the validity of the condition, plaintiff was allowed to deed the properties to the City in compliance with the condition attached to issuance of the permit, and still reserve his right to collaterally attack the Planning Commission's action. In this regard, the trial court found that plaintiff complied with the condition while at the same time "reserving his right to question the authority of the City to require the dedication of the said property." In the meantime, the deeds have been recorded, the streets widened, the sidewalks installed, and the service station has been erected and is in operation.

The "test case" then took the form of an inverse condemnation action,[2] in which plaintiff sought compensation for the two strips of land which he had dedicated to the City. The form of this action caused two departures from established procedures for judicial review of administrative actions. First, evidence was allowed and considered which was clearly not before the Planning Commission. Plaintiff, who had not been a witness before the Planning Commission, testified at length concerning traffic conditions as they existed both before and after the service station commenced operation. Also, the court made two visits to the scene and commented at length upon the traffic flow

[2] A declaratory judgment action would have been more appropriate for the purposes. The stipulation appears to have obligated the City to pay for the dedicated property in the event of an adverse ruling on the test case.

in its oral decision. Obviously these observations were used by the court in concluding that the service station had not caused an "immediate danger of congestion."

Had normal appellate review been utilized, the court could properly consider only the evidence put before the Planning Commission. Such evidence could not have included more than expectations of congestion, or the lack thereof, generating from the new service station. While it seems unfair to the City to allow its administrative actions to be reviewed by independent and "after the fact" evidence, in the absence of an objection, we must assume that this evidence was properly considered.

The second departure from normal review procedure involves the scope of review, and poses a much more serious problem. The trial court obviously made an independent review of the factual issues and applied a "preponderance of the evidence" test in arriving at its decision, rather than an "arbitrary and capricious" standard normally required in judicial review of administrative actions. It is axiomatic that administrative actions, if properly authorized under zoning ordinances, may be interfered with by the courts only if they are conducted in an arbitrary and capricious manner. *Evergreen State Builders, Inc. v. Pierce County*, 9 Wn. App. 973, 516 P.2d 775 (1973). Applying any other standard for review of the decision of the Planning Commission would, we think, defeat the purpose of the action as stipulated by the parties, *i.e.*, to test the validity of the condition imposed in connection with the granting of the permit. Accordingly, we believe that in order to reverse the Planning Commission's factual determination of the need for the condition, the trial court would have to find that the imposition of the condition, as applied to the evidence before it, was willful and unreasoning, without consideration and in disregard of facts and circumstances. *Evergreen State Builders, Inc. v. Pierce County, supra.*

It was noted in *Evergreen* that where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even

though the court might believe that an erroneous conclusion was reached by the Planning Commission. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955); *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno,* 59 Wn.2d 366, 367 P.2d 995 (1962).

For these reasons, if the Planning Commission's factual determination was not "arbitrary and capricious" when applied to the facts, the trial court was in error in its conclusion, even though the result might be proper by application of a "preponderance of the evidence" test. *See Sharninghouse v. Bellingham,* 4 Wn. App. 198, 480 P.2d 233 (1971).

The trial court's ruling against the City was based largely upon three grounds, two legal and one factual: (1) that the City acted "without authority in law" in imposing the condition upon grant of the permit; (2) that the Tacoma City Code, Sec. 13.06.376, did not expressly authorize the dedication of such property; and (3) since the City failed to establish that the service station would pose an "immediate danger" of traffic congestion, the condition imposed was "without basis in fact."

For the reasons stated below, in our view these rulings were in error. We first consider the general authority of the City to impose the type of condition involved. We note that the trial court was without the benefit of *State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973).[3] That case discusses the general statutes through which cities are allowed to regulate and impose restrictions upon the use of land. It would be unnecessarily repetitious to review the Supreme Court's careful analysis of the statutory power of cities to delegate to planning commissions the authority to require permits for special uses of land. The principal requirement for the issuance of such permits is that they be guided by adequate standards. *Durocher v. King County,* 80 Wn.2d 139, 492 P.2d 547 (1972).

---

[3]The opinion in *State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973), was filed May 31, 1973, after the case at bench was tried.

■ More importantly for our purposes, the Supreme Court in *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* held that cities have inherent power to impose reasonable conditions and restrictions on the issuance of special use permits, even though the imposition of such conditions is not guided by specific standards. 3 R. Anderson, *American Law of Zoning* § 15.29 (1968). To be valid, such conditions must (1) not offend any provision of the zoning ordinance, (2) not require illegal conduct on the part of the permittee, (3) be in the public interest, (4) be reasonably calculated to achieve some legitimate objective of the zoning ordinance, and (5) not be unnecessarily burdensome or onerous to the landowner. *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra.*

Furthermore, the court held in *Standard* that the City may rely upon its comprehensive plan of development as guidance for the imposition of reasonable conditions on the granting of special permits.

■ The function of the reviewing court in considering the validity of such conditions was discussed in *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra* at 332:

> If the conditions imposed were reasonably calculated to achieve the purposes set forth in the comprehensive plan and were not unnecessarily burdensome, the court should not set them aside.

*See Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969).

■ Before analyzing Tacoma's ordinance in light of the above test, we must consider the nature of the condition at issue, since it required a contribution of portions of plaintiff's property, *i.e.,* a dedication of land. The principle that a property owner may be compelled to contribute financially to street or other improvements as a prerequisite to obtaining some beneficial use of his property is not new to the law of zoning. It is recognized by RCW 35.44.020, as it pertains to local improvement assessments, and it is recognized by case law with respect to concomitant agreements.

*State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 422 P.2d 790 (1967).

In *State ex rel. Myhre v. Spokane,* the Supreme Court stated at page 216:

> Widening streets and installing electrical controls for the safety of both pedestrians and vehicular traffic are regulatory measures which are within the proper exercise of the city's police power. When the city requires that the cost of such safety measures be borne by the company, it is not bargaining away its regulatory police power but, rather, determining that the cost should be borne by the persons who created the necessity for the expenditure of such funds, instead of by the city generally.

*See* a discussion of this principle in the dissenting opinion of Justice Marshall Neill in *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971).

We see no reason to differentiate this case from the analogous situations concerning concomitant agreements, so long as requirements discussed in *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra* are fulfilled. Here, it was the application for the special use permit that, at least in the view of the City, created the necessity for the wider streets, pedestrian walkways, and so forth. If that view is factually supported, then plaintiff, rather than the City, should bear the costs of such improvements as in *State ex rel. Myhre v. Spokane, supra.*

We turn next to the City's ordinance and the Planning Commission's ruling to determine whether the aforementioned requirements of *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* were met.

Tacoma City Ordinance No. 18628 includes Sec. 13.06.376, which contains detailed development standards for the construction and operation of automobile service stations. Subsection A of 13.06.376 provides:

> It is found and declared that the location and operation of automobile service stations in the City of Tacoma are necessary to our modern way of life, but the public interest requires that they shall be subject to regulation under

the police power. The business of storing and handling gasoline at automobile service stations within a developed area is attended with a peculiar degree of danger to life and property, due to its flammable and explosive propensities. It is further found that noxious odors, noise, and traffic hazards emanating from the conduct of such a business are such to make the regulation of its location necessary and reasonable to promote the public health, safety, and general welfare.

The first development standard in Subsection D(1) implicitly recognizes the possibility that dedication of property may be required to assure that the general purpose of the ordinance is fulfilled:

The service station site shall have a minimum width of 120 feet and a minimum area of 15,000 square feet after *dedication of all required street right of way.*

(Italics ours.)

In passing upon application for permits to operate service stations, Subsection E of the ordinance directs the Planning Commission to be guided by the following criteria:

1. The proximity of other service stations or other businesses storing or handling flammable liquids or materials;[4]

2. The proximity to residences, schools, hospitals, churches, theaters, parks, and other places of public assembly;[5]

3. Any adverse effect that the proposed use would have on traffic on the abutting streets and highways, including, but *not limited to, congestion, turning movements, and dangers to pedestrians.*[6]

(Italics ours.)

It is clear to us that the above ordinance satisfied the

---

[4]There were two other service stations on the intersection in question.

[5]To the south of plaintiff's service station was a large K-Mart shopping center with a heavy volume of automobile and pedestrian traffic. Across the street from the potential service station site was a bank.

[6]Two major arterial streets formed the intersection of East 72nd Street and Portland Avenue.

requirements of *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* for the imposition of the condition that the two strips of land be dedicated, provided that when applied to the facts, the condition was not unnecessarily burdensome and was reasonably calculated to alleviate any adverse effects which the new service station might have on any of the three criteria set forth above.

The zoning ordinance involved is not only compatible with the type of condition imposed, it appears to be specifically contemplated to promote one of the stated purposes of the ordinance, *i.e.,* safety. Furthermore, the criteria, in our view, afford sufficient standards for the granting or denial of the permit in question.

For these reasons it was error for the trial court to conclude that the City acted without authority of law in imposing the condition in the grant of the permit. We conclude that the condition was within the City's police power and was authorized by both state law and by its own ordinance.

We now turn to the question of whether or not imposition of the condition was arbitrary and capricious. In reviewing the findings of the trial court as explained by its oral decision, it is obvious that the court considered only one facet of the testimony, *i.e.,* the plaintiff's testimony that in fact less traffic was generated by the service station than by the preexisting businesses which had previously operated on the property.

The court expressly rejected the detailed testimony of the City's witnesses as it pertained to pedestrian safety, as well as to the question of traffic control. The City's chief engineer and the City traffic engineer specifically testified that the strips of land were needed to provide ample space for sidewalks and curbs so that pedestrians would be directed away from the traffic lanes when they crossed the two wide entrances and exit driveways required on each street side of the service station. Furthermore, even though the immediate impact may not have resulted in increased congestion, the long-range impact of this service station in

connection with other commercial development on both major arterials would, according to these experts, require that both arterials be widened, particularly at the intersections where turning movements must be accommodated. Both streets are major arterials, one feeding into Interstate 5 to the west and the other serving Interstate 5 to the south.

With the safety factors and traffic control problems (right and left turn lanes) and the potential future congestion, the City's action in requiring the permit was at the very least debatable—and clearly not arbitrary and capricious.

The City's witnesses also testified that under the projected overall plan for arterial development there would be insufficient funds for several years, because of other higher priority problems, to condemn property sufficient to widen the streets. The trial court also stated this fact was not material to the issue. But this is inconsistent with the view expressed in *State ex rel. Standard Mining & Dev. Corp. v. Auburn, supra,* that the comprehensive plan may be considered in determining the reasonableness of the condition. It seems to us that whether a condition which requires a landowner to bear part of the cost of a necessary street improvement is reasonable depends, in part at least, upon the City's ability to provide the improvements in some other way, particularly where the property owner's projected use of the property creates in a substantial way the necessity for the improvements.

Likewise, we are not persuaded that the condition as proposed was unnecessarily burdensome. One expert, called by the City, testified that in his opinion the additional benefits to plaintiff's land from the improvements offset any loss in value caused by the decreased size of the property. While this testimony was disputed by plaintiff's own opinion as to his loss, it was not disputed that an automobile service station was the highest and best use for the property. Furthermore, no representatives of Mobil Oil Corporation testified that the smaller size of the lot was

894

unduly restrictive upon their operations. At the very least, the decision was debatable and made upon conflicting evidence. As such, it is not subject to judicial interference. *Sharninghouse v. Bellingham,* 4 Wn. App. 198, 480 P.2d 233 (1971).

Reversed and remanded with directions to dismiss the action.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied April 24, 1975.

Review denied by Supreme Court June 24, 1975.