BETHLEHEM EVANGELICAL LUTHER-
AN CHURCH, a Colorado Non-profit
Corporation, and Tamminga Construc-
tion Company, Inc., a Colorado Corpora-
tion, Plaintiffs-Appellees,

v.

CITY OF LAKEWOOD, a Colorado Corpo-
ration, the City Council of the City of
Lakewood; Carolyn Bacher, Sharon
Carr, Don DeDecker, Carl Neu, Gaylor
Smith, Paul Thompson, Lester Willson,
Bill Wilson and Robert Wright as mem-
bers thereof; City of Lakewood Plan-
ning Commission; Kenneth Cameron,
Sarah Masterson, Howard Revie, Antho-
ny Sabatini and John Kelly as members
thereof; and Charles L. Gillett, Superin-
tendent of Code Enforcement and Chief
Building Official of the City of Lake-
wood, County of Jefferson, State of Col-
orado, Defendants-Appellants.

No. 28521.

Supreme Court of Colorado,
En Banc.

April 6, 1981.

As Modified on Denial of Rehearing
April 27, 1981.

Donald E. Mielke, Lakewood, for plaintiffs-appellees.

Gorsuch, Kirgis, Campbell, Walker & Grover, Robert E. Warren, Jr., Solomon & Zimmerman, David A. Solomon, Denver, for defendants-appellants.

LEE, Justice.

This case arises out of the action of the appellant, City of Lakewood (City), in imposing certain conditions upon the issuance of a building permit sought by appellee, Bethlehem Evangelical Lutheran Church (Church), for the construction of a gymnasium. The Church successfully brought a C.R.C.P. 106 review proceeding combined with a declaratory judgment action and petition for injunctive relief to have declared void and unconstitutional the action of the City in imposing conditions on the issuance of a building permit. From the adverse ruling of the district court, the City brings this appeal. We reverse the judgment.

The Church, in addition to its church facilities, owns and operates the Bethlehem Lutheran School on its property located at the intersection of 22nd Avenue and Wadsworth Boulevard in the City of Lakewood. In 1975 the Church embarked on a program to enlarge its school facilities by construction of a gymnasium. It applied for a building permit and, in accordance with the requirements of section 14.13.010 of the Lakewood Municipal Code, the application for a building permit was referred to the Department of Community Services for review. Section 14.13.010 provides:

"*Public Improvements.*—City of Lakewood Municipal Code.

"Applications for building permits shall be reviewed by the Department of Community Services to determine whether the proposed construction will require the installation or construction of public improvements, such as street paving, curbs, gutters, sidewalks, drainage facilities, or other public improvements.

"If it is determined by the Department of Community Services that any such public improvements are necessitated by the proposed construction, the Department of Community Services shall so inform the Building Official, and in such event a condition shall be inserted in the building permit which shall require the construction of such public improvement or public improvements by the permittee and the dedication thereof to the city. The cost of any such improvements shall be borne by the permittee, and the construction thereof shall be at the sole cost, risk and expense of the permittee, subject to the provisions of any applicable city ordinance, regulations or policies.

"In addition, any contractor holding a building license pursuant to Section 14.-04.060 is subject to the suspension or revocation procedures set forth in Section 14.04.060. Failures to comply with the provisions for public improvements required by this section shall be violations of this building code and, as such, shall constitute grounds for the suspension or revocation of a license.

"All such improvements are to be constructed in full compliance with the City of Lakewood Engineering Regulations, Design Standards and Construction Specifications as adopted by city council Resolution 71–3, as amended."

As a result of this review procedure, the Department of Community Services, as a condition for the issuance of the building permit, required that the Church make certain street improvements and dedicate certain land to the City for its use. In particular, the City required that

"* * * (A) The following property is to be dedicated as public right of way:

"(1) To the City of Lakewood, the east 25 feet for Vance Street and

"(2) To the City of Lakewood, approximately the north 15 feet for West 22nd Avenue. The new right of way line is to be 6" in back of the existing walk and

"(3) To the State of Colorado, approximately the west 8 feet of the south 280 feet for Wadsworth Blvd. The new right of way line is to be 6 inches behind the new 5 foot attached concrete sidewalk. * * *"

In addition, the City required that the Church construct and pay for curb, gutter, sidewalk, and street improvements on a portion of those dedicated strips. The estimated cost of the improvements was $16,900, including a 50% contingency for inflation.

The Church appealed the decision of the Department of Community Services to the Planning Commission pursuant to section 14.04.050 of the municipal code. After an evidentiary hearing, the Planning Commission affirmed the determination of the Department of Community Services. The Church then commenced the district court action for review and for declaration of invalidity and injunctive relief.[1]

The district court found that the ordinance relied upon to validate this action, section 14.13.010, Lakewood Municipal Code, was without standards to guide administrative action; that the requirement that the Church dedicate the parcels to the City and State was a taking of property without compensation in violation of the United States Constitution, Amend. XIV, and Art. II, sec. 25, of the Colorado Constitution; and that the requirement that the Church pay for the improvements was a violation of freedom of religion guaranteed by the United States Constitution, Amend. I, and Art. II, sec. 4, of the Colorado Constitution.

1. This action was commenced April 30, 1976. The Church was permitted to construct the gymnasium without compliance with the building permit conditions, pending this litigation and a final determination of the validity of the conditions. A Certificate of Occupancy was issued November 26, 1976.

## I.

The Church argued here and in the district court that section 14.13.010 of the Lakewood Municipal Code improperly delegates legislative authority without the imposition of standards sufficient to guide the discretion of the Department of Community Services. We do not agree.

■ Initially, we observe, as has been so often stated, that a legislative enactment is presumptively valid and one who challenges it has a heavy burden to establish its unconstitutionality beyond a reasonable doubt. *Fry Roofing Co. v. Dept. of Health,* 179 Colo. 223, 499 P.2d 1176 (1972). Furthermore, such an enactment must be read as a whole to ascertain whether adequate standards have been provided.

It is clear that, as a statutory city, the exercise of its power through its Building Department and Planning Commission in imposing conditions pursuant to section 14.-13.010 of the municipal code derives from its authority to provide for and regulate the streets, alleys, sidewalks, crosswalks, curbs and gutters, and traffic. Section 31–15–702, C.R.S.1973.

■ The ordinance in question requires that the Department of Community Services determine whether the proposed construction will require the installation or construction of public improvements, such as street paving, curbs, gutters, sidewalks, drainage facilities, or other public improvements. In making this determination, the department must inquire whether the "public improvements are necessitated by the proposed construction." If so, conditions may be imposed on the issuance of the building permit. In our view, the standard of "necessity" is a sufficient standard to guide the Department of Community Services in making its determination, considering the broad power of the City to provide for and regulate the use of streets, alleys, and sidewalks and the City's correlative obligation and duty to maintain the same for the users thereof. Implicit in the standard of "necessity" is the requirement that the City make provision for the safety and welfare of the general public, particularly in relation to increased vehicular and pedestrian traffic that may be generated by the construction of a proposed building—here, a school gymnasium. Although it is a general and broad standard, "necessity" as a standard for the guidance of an administrative agency has been held sufficient in the context of other statutes delegating legislative authority. *Colo. Auto. & Truck Wreckers v. Dept. of Rev.,* Colo., 618 P.2d 646 (1980); *Fry Roofing v. Dept. of Health, supra; State v. Arizona Mines Supply Co.,* 107 Ariz. 199, 484 P.2d 619 (1971). *See also American Power & L. Co. v. S. E. C.,* 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946); *Hirabayashi v. United States,* 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). *See generally Asphalt Paving Co. v. County Commissioners,* 162 Colo. 254, 425 P.2d 289 (1967); *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621 (1965); *Hazlet v. Gaunt,* 126 Colo. 385, 250 P.2d 188 (1952). We find that the standard of necessity is sufficient in the context in which it is used in the ordinance under consideration.

Holding as we do that the standard of "necessity" is sufficient, the ordinance does not leave the imposition of conditions to the whim of the Department of Community Services, but as heretofore noted the conditions must be related to the public safety of the user of the sidewalks and streets. Moreover, the ordinance requires that such improvements be constructed in full compliance with legislatively adopted "engineering regulations, design standards and construction specifications." Thus, the delegated discretion is circumscribed as to the nature and extent of the improvements that may be required. As an additional safeguard from arbitrary abuse, the imposition of the conditions is subject to review by the Planning Commission. In the present case, review was had, extensive testimony presented, and the determination of the Department of Community Services was affirmed.

## II.

In the context of this case, we note that the City did not initiate the proceedings

which resulted in the conditions imposed requiring that portions of the Church property be dedicated for street purposes. The necessity for the requirement of dedication and installation of public improvements was occasioned by the Church's proposed use of its property to accommodate a school gymnasium. The evidence before the Planning Commission clearly demonstrated that the need for the widened streets, the curbs, gutters, sidewalks and street paving was created by the proposed construction of the school gymnasium. The impact from the use of the property for such purposes, the evidence showed, would result in an increased vehicular and pedestrian flow of traffic going by, in, and out of the school facilities, interference with existing traffic patterns on adjacent streets, and an increase in the danger to the users of the property, particularly the school children. Existing problems occasioned by the present lack of street improvements would be aggravated by the expanded use of the school property.[2] Additionally, more rapid deterioration would occur to the adjacent streets, West 22nd Avenue and Vance Street, which were paved with two lanes of asphalt, largely without curb, gutter or sidewalk, and thus entail greater maintenance by reason of the increased traffic caused by the expanded property use.

■ The evidence before the Planning Commission on review clearly was sufficient to support the determination of the Department of Community Services that, in the interest of the public safety and welfare, the public improvements and the dedications of land for street purposes should be made conditions to the issuance of the gymnasium building permit.

The Church argues, however, that the City may not legally use its police power to force the Church to construct public improvements at the Church's expense and to compel the Church to dedicate its property to public use for street purposes without paying just compensation.

■ As to the requirement that the Church construct the public improvements, the City has broad statutory authority to widen, pave, and otherwise improve the streets; to provide for the construction and maintenance of sidewalks, curbs and gutters; and to assess the costs of street surfacing and improvements, and the sidewalks, curbs and gutters upon adjacent abutting property. Section 31–15–702, C.R.S.1973.[3] The theory upon which the owner of the property abutting a street may be required to pay the costs of public improvements, such as streets, street paving, curbs, gutters and sidewalks, is that the property is especially benefited by the improvements over and above the general benefit to the public at large. *Watson v. Fort Collins*, 86 Colo. 305, 281 P. 355 (1929); *County Commissioners v. City*, 66 Colo. 111, 180 P. 301 (1919).

■ In view of the statutory scheme that permits the assessment of these property improvement costs to the abutting property, we have no difficulty in holding that when a property owner seeks to put his property to an enlarged use which reasonably necessitates, in the interest of public safety and welfare, the installation of sidewalks, curbs, gutters and street surfacing, a building permit may be conditioned on the construction of such public improvements at the cost of the property owner. We do not find that the imposition of such a condition is unreasonable or a misuse of the police power.

■ The Church further contends that, even if the imposition of the condition that the Church construct the public improvements at its expense is a valid use of the

---

2. The district court acknowledged this to some degree when it found: "The requirements the City has made are in the good interest of the City but the only real problem that was advanced that I thought was of substance, was children walking out between cars and the safety factor of busses double-parking."

3. The exercise of this power may be through the mechanism of public improvement districts initiated by petition of the abutting property owners or by direct action of the City. Section 31–25–501 *et seq.*; section 31–35–301 *et seq.*, C.R.S.1973.

police power, still, the further condition requiring the dedication of strips of land to the City for street purposes is in effect an unconstitutional taking of property without compensation in violation of the United States Constitution, amend. XIV, and the Colorado Constitution, art. II, sec. 25. We do not agree, except insofar as the required dedication might include a portion of the Church improvements already constructed.

We do not view the proceeding to be one of eminent domain requiring the payment of compensation for the property required to be dedicated for street purposes. Rather, the imposition of the condition of dedication is an exercise of the police power. It is the Church which is seeking to obtain the benefits from an enlarged use of its property, and the duty rests upon it to comply with reasonable conditions, conceived in the public interest, to prevent and avoid adverse effects on the vehicular and pedestrian traffic on the streets adjacent to the Church property. There is a recognized distinction between the exercise of the power of eminent domain and the exercise of the police power which results in non-compensatory reasonable restrictions in respect to private interests which must yield to the public interest. *Ayres v. City Council of Los Angeles*, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503 (1949). This principle has been noted in cases involving platting of subdivisions, zoning, and rezoning, where dedications of land for street and other purposes have been made conditions for governmental approval. *Frisco Land and Mineral Co. v. State*, 74 Cal.App.3d 736, 141 Cal.Rptr. 820 (1977) and *City of Carbondale v. Brewster*, 78 Ill.2d 111, 34 Ill.Dec. 838, 398 N.E.2d 829 (1979); and *see Ayres, supra*.

■■ The exercise of the police power for such purposes, however, is not without limitation. The governmental action in the form of regulation may not be so onerous as to constitute a taking which constitutionally requires compensation. *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

"The police power cannot extend beyond the necessities of the case and be made a cloak to destroy constitutional rights as to the inviolateness of private property. *House v. Flood Control Dist.*, 25 Cal.2d 384, 153 P.2d 950, 952 (1944). An arbitrary, conceived exaction will be nullified as a disguised attempt to take private property for public use without resort to eminent domain. *Mid-way Cabinet Fixture Mfg. v. County of San Joaquin*, 257 Cal.App.2d 181, 65 Cal.Rptr. 37 (1967). A strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)." *Transamerica Title Insurance Co. v. City of Tucson*, 23 Ariz. App. 385, 533 P.2d 693 (1975).

In *King's Mill Homeowners v. Westminster*, 192 Colo. 305, 557 P.2d 1186 (1976), the general principle was recognized that conditions imposed in the exercise of the police power are valid as long as they are "reasonably conceived." *See also Transamerica Title Insurance, supra*.

The test as more explicitly enunciated by the United States Supreme Court is stated in *Goldblatt v. Town of Hempstead, supra*, as follows:

"The classic statement of the rule in *Lawton v. Steele*, 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385, 388 (1894), is still valid today:

'To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public . . . require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.'

"Even this rule is not applied with strict precision, for this Court has often said that 'debatable questions as to reasonableness are not for the courts but for the legislature . . . .'" *E. g., Sproles v. Binford*, 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167, 1179 (1932)."

The same criteria are applicable to the City's imposition of the condition requiring the dedication of land for street purposes. Examined by the *Goldblatt* criteria, the interest of the public requires the dedication, and the dedication is reasonably necessary for the purpose of promoting public safety and is not unduly oppressive upon the Church. Stated otherwise, the condition is neither arbitrary nor capricious, but rather is reasonably conceived to avoid danger to the pedestrian and vehicular traffic on the streets adjacent to the Church.

Other states have upheld similar requirements against claims that the required dedications constituted an unlawful taking without compensation. *Sommers v. Los Angeles*, 254 Cal.App.2d 605, 62 Cal.Rptr. 523 (1967) and *Gerla v. Tacoma*, 12 Wash. App. 883, 533 P.2d 416 (1975). *Sommers, supra,* is particularly enlightening. The plaintiff there sought to expand a service station which was located at the intersection of two busy streets. As a condition to the approval of the expansion plans, the City of Los Angeles required the dedication of certain parcels of land for the use in street improvements necessitated by the proposed improvements. The court found that:

> "It is appropriate here to point out that it is the appellants, not the city, who wish to put their property to an expanded use notwithstanding the complications in traffic flow and the interference in the use of the streets to their full capacity in the immediate vicinity by the additional in-and-out traffic at the station. If appellants desire the benefits resulting from the installation of the improvements in question they must meet any reasonable conditions imposed by the city before they can compel the city to issue the permit for such improvements. (See *Southern Pacific Co. v. City of Los Angeles,* supra, 242 Cal.App.2d 38, at p. 47, 51 Cal.Rptr. 197.) In the circumstances here disclosed we cannot say, as a matter of law, that the condition imposed by the

city was not reasonable. And the fact the requested dedication and the improvement of the streets and intersection would 'incidentally benefit the city as a whole is an irrelevant consideration.' (*Southern Pacific Co. v. City of Los Angeles,* supra, at p. 51, 51 Cal.Rptr. at p. 204.)"

We are thus persuaded that the City's action here does not constitute an unconstitutional taking of private property without just compensation, except as hereinafter noted. It follows that if the Church desires the benefits resulting from the improvement of its property, it must comply with reasonable conditions imposed by the City for dealing with traffic problems caused by that improvement.

A problem arises because of the condition requiring the dedication of "approximately the north 15 feet for West 22nd Avenue. The new right of way line is to be 6″ in back of the existing walk * * *." The Church's new right-of-way line would encroach on a portion of the north wall of one of the Church buildings. The Church's important interest in owning its building outweighs the City's interest in this particular six-inch strip of land. Such a requirement would be unduly oppressive under the *Goldblatt* test and could not be justified under the police power but rather would require the payment of compensation for the portion of the building wall taken. We agree with the district court's ruling that insofar as the required dedication along West 22nd Avenue encroaches on the Church building it is an impermissible exercise of the police power.[4]

### III.

Finally, the district court observed generally that the law provides preferential treatment for churches. However, church construction is subject to such reasonable regulations as may be necessary to promote the public health, safety, or general wel-

---

4. The record indicates that the officials of the City did not intend to encroach upon the wall of the Church building and that appropriate adjustments would be made in order to avoid this consequence.

fare. *Board of Zoning Appeals v. Decatur Co. of Jehovah's Witnesses*, 233 Ind. 83, 117 N.E.2d 115 (1954); *Allendale Cong. of Jehovah's Witnesses v. Grosman*, 30 N.J. 273, 152 A.2d 569 (1959); and 2 Anderson, *American Law of Zoning*, § 12.18 (1976); *see East Side Bapt. Ch. v. Klein*, 175 Colo. 168, 487 P.2d 549 (1971); *Sherman v. Simms*, 143 Tex. 115, 183 S.W.2d 415 (1944); Note, *Churches and Zoning*, 70 Harv.L.Rev. 1428 (1957); Annot., 74 A.L.R.2d 377; *Cf. Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); and *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

This court has previously held that churches are subject to the police power when the state can show a substantial interest. *Pillar of Fire v. DURA*, 181 Colo. 411, 509 P.2d 1250 (1973) and *DURA v. Pillar of Fire*, 191 Colo. 238, 552 P.2d 23 (1976) (hereinafter referred to as *Pillar of Fire I* and *Pillar of Fire II*, respectively).

"* * * [W]e must balance the interests involved in the controversy before us and recognize that the state must show a substantial interest without a reasonable alternate means of accomplishment if the state is to be constitutionally allowed to take the birthplace of the Pillar of Fire Church * * *." *Pillar of Fire I, supra.*

In the present case, the interference, if any, with the free exercise of religion is minimal. Unlike *Pillar of Fire I* and *Pillar of Fire II*, where an entire church building was to be condemned in the interest of slum clearance, in this case the church is merely required to upgrade streets surrounding its property and dedicate a small portion of its property to public use. The City has a substantial interest in developing streets which will facilitate the safe and free flow of traffic. The City is also interested in the maintenance of and liability for the streets within its jurisdiction. It is not reasonable to require the City to condemn every parcel of land necessary for street improvements when those improvements are necessitated by construction by abutting landowners.

The following cases cited by the Church, in our view, are inapposite. *Englewood v. Apostolic Christian Church*, 146 Colo. 374, 362 P.2d 172 (1961), dealt with a total ban of churches from most areas of that city. There is no such ban here, only a reasonable regulation. *Westchester Reform Temple v. Brown*, 22 N.Y.2d 488, 293 N.Y.S.2d 297, 239 N.E.2d 891 (1968), dealt with restrictions which had the effect of barring an expansion of the church building itself. The construction was necessitated by increased community demand. In that case, the court held that the interest in protecting the freedom of religious exercise outweighed the governmental interest. The required performance would have resulted in a prohibitive $100,000 added cost to the church. No such financial burden is sought to be imposed on the Church in the present case. We hold that the requirement that the Church construct, pay for, and dedicate public improvements, is not a violation of freedom of religion guaranteed by the Colorado and United States Constitutions.

The judgment is reversed except as to the six-inch strip behind the existing sidewalk on West 22nd Avenue upon which the north wall of the Church building encroaches, as to which the judgment is affirmed.