[No. 46113-3-I. Division One. April 16, 2001.]

WOODINVILLE WATER DISTRICT, *Appellant*, v. KING COUNTY, ET AL., *Respondents*.

898

*Rosemary A. Larson* and *Michael P. Ruark* (of *Inslee, Best, Doezie & Ryder, P.S.*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John F. Briggs, Senior Deputy,* for respondents.

*Barbara Kelson,* pro se.

KENNEDY, J. — A King County Hearing Examiner granted Woodinville Water District a conditional use permit to expand its nonconforming use of its facility in rural King County. A condition of the permit stated that "[n]o expansion of site employment beyond 35 permanent employees shall occur without issuance of a new conditional use permit." The District contends on appeal that the hearing examiner lacked authority to impose the condition because it was not reasonably calculated to achieve legitimate land use goals and operated instead to impermissibly regulate the operation of the District's business. The District also contends that the condition is unduly burdensome in that the number of employees the District will need in the future depends upon the amount of development authorized by King County and other municipalities, as well as the enactment of state and federal laws and regulations. Finally, the District contends that the condition is not supported by substantial evidence. The challenged condition is complementary to another (unchallenged) condition requiring a traffic study using site trip generation data based on 35 site employees. These two conditions are designed to ensure the validity of the traffic study and mitigation requirements that will be based on that study. The 35-employee figure allows for 3 more additional employees than the District estimated it would need in the 10 years following the hearing. It is not unduly burdensome to require a landowner to apply for a new conditional use permit before expanding its operations beyond the level of

nonconforming use that was contemplated when an earlier conditional use permit was granted. The hearing examiner acted within the bounds of the authority granted to hearing examiners under the King County Code, and properly applied the criteria contained in the code for reviewing nonconforming use permits. Substantial evidence supports the condition. Accordingly, we affirm.

## FACTS

The Woodinville Water District is a municipal corporation that provides water and sewer service to an area that is partly in the City of Seattle and partly in unincorporated King County. The District's administrative and operations facilities are on a 9.74-acre site in unincorporated King County's RA-5 zoning district.

At the time of the hearing here at issue, the District's property contained several buildings, a paved parking lot, and a paved vehicle maintenance yard, all of them located on the southern four acres of District property that abut the Woodinville-Duvall Road. Residentially developed RA-2.5 zoned properties lie to the west and northwest of the property. Respondent Barbara Kelson's residential property abuts the developed portion of the District's property to the west. The property to the east is undeveloped.

The District has used its property for public utility purposes since 1968. It received conditional use permits in 1979 and again in 1990 to expand its facility in order to accommodate its growing operations. The 1990 conditional use permit was issued in anticipation that the expanded facility would accommodate 16 employees and have 27 parking spaces. Thus, the conditions placed on the 1990 permit were intended to mitigate the impact of that degree of expansion.

In 1997, the District applied for a third conditional use permit to again expand its facility. This application indicated that 27 employees would work at the expanded facility and that 51 parking spaces were needed. King

County's Department of Development and Environmental Services granted the District's conditional use permit with conditions.

Barbara Kelson appealed the Department's decision to the King County Hearing Examiner. The examiner reversed the grant of the conditional use permit, concluding that the District's existing facilities and operations did not qualify as legally established nonconforming uses. The District appealed this decision to the King County Superior Court. That court reversed the hearing examiner's decision, concluding that the District's existing operation became established as a legal nonconforming use under zoning regulations in effect at the time that the conditional use permit was issued in 1990. The matter was remanded back to the hearing examiner for a hearing on the merits of the application, and it is from that hearing that the instant appeal arises.

At the hearing, which was held in late March and early April of 1999, Ken Pick, the District Utility Planning Engineer, testified that the District had 29 employees and anticipated adding 2 or 3 more employees within the following 10 years. Mr. Pick also testified that the Woodinville-Duvall Road is an extremely busy arterial that often has traffic backups. Ms. Kelson testified that she often had difficulty entering the Woodinville-Duvall Road from her driveway because of traffic from the facility. Tim Shreavor of Alliant Engineering and Land Surveying testified that traffic leaving the facility and three driveways near the facility could constitute a hazardous condition and that if the District added more employees it would generate increased traffic in the area. Gary Kohler, the Department Planner, testified that the District's proposal would not substantially increase traffic over its current level and that he believed that the amount of parking stalls and office space—rather than the number of employees—would limit the number of vehicles coming onto the site. No traffic study had been done in connection with the District's application.

Because the District's operations had expanded far be-

yond those contemplated when the 1990 conditional use permit was granted, and because the District had failed to fulfill some conditions that had been placed on the grant of the 1990 permit, the examiner concluded that the "existing circumstances" against which the new impacts from the current application should be measured were those authorized by the 1990 permit—including both the level of development authorized by that permit and the impact mitigation requirements imposed at that time. As a result of this, the examiner determined that conditions placed on the grant of a new permit should include those that were imposed in 1990 that had not been fulfilled, and those that were necessary to mitigate the impact arising from the District's intervening expansion of its operations beyond that authorized by the 1990 permit, as well as those necessary to mitigate the impact of even more expansion resulting from the current application.

Accordingly, the examiner granted the District's 1999 application with numerous conditions related to landscaping, noise mitigation, building construction, storage facilities, and lighting, some of which were for the purpose of remedying the District's failure to fulfill conditions that had been imposed when the 1990 permit was issued, some of which were for the purpose of mitigating adverse impacts resulting from the District operations that had been expanded far beyond those contemplated in 1990, and some of which were for the purpose of mitigating anticipated impacts resulting from the District's proposed expansion.

With respect to traffic, the hearing examiner determined that the issues relating to vehicular access and circulation were largely the result of the District's "unfettered expansion" beyond the scope contemplated when the 1990 permit was issued, so that a traffic study ought to be done as a condition of the new permit:

> The principal issues appear to be whether the level of site-generated vehicle traffic has been adequately identified, and whether vehicle safety is impaired along the Woodinville-Duvall Road frontage where the two District entries and Ms.

Kelson's access driveway all co-exist within an approximately 500-foot frontage. Because these issues merit review, the question arises as to whether a conditional use permit should be issued prior to completion of the traffic study. [My] view is that such deferral is workable in this instance because most of the issues under consideration relate to existing conditions. The major impediment to the validity of the traffic study conclusions would be the potential for unlimited future expansion of employment on the site, a matter which is best dealt with as a separate problem.

Clerk's Papers at 353 (Hearing Examiner's Decision).

The hearing examiner devised a two-prong remedy for the concern that the District might once again expand its operations far beyond the scope contemplated by the 1999 permit, as had occurred with the 1990 permit, without applying for a new conditional use permit. The first prong, which the District does not challenge, required a "traffic study evaluating entering and exiting vehicle movements and potential conflicts with other driveways in the area, using site trip generation data based on 35 site employees[.]" *Id.* at 357. As part of this same condition the examiner required the District to make such alterations in the site circulation plan as safety requirements might mandate, as a condition of the issuance of a building permit for the expansion. The second prong, which the District does challenge, consisted of a condition stating that "[n]o expansion of site employment beyond 35 permanent employees shall occur without issuance of a new conditional use permit." *Id.* at 358.

As do the parties, we shall hereafter refer to the condition limiting the expansion of site employment to 35 permanent employees without a new conditional use permit as "Condition 10." The District appealed Condition 10 to the King County Superior Court, which affirmed. This appeal followed.

## DISCUSSION

The District argues that the hearing examiner's imposi-

tion of Condition No. 10 (1) is clearly erroneous and beyond the examiner's authority because it is not directly tied to the use of the land and the impact of that use on the surrounding property, (2) is unduly burdensome in that it impermissibly intrudes into the District's management decisions regarding the most effective manner in which it should conduct its business and because the number of employees the District will need in the future depends upon the amount of development authorized by county and municipal authorities, as well as the enactment of state and federal laws and regulations, and (3) is not supported by substantial evidence. Each argument is addressed in turn.

Standard of Review

Under RCW 36.70C.130(1), a court may grant relief from a land use decision on one or more of the following grounds:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

> (d) The land use decision is a clearly erroneous application of the law to the facts;

> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision[.]

RCW 36.70C.130(1)(b)-(e).

■ ■ Under the "clearly erroneous" standard of RCW 36.70C.130(1)(d), a reviewing court may reverse an administrative determination only when, after considering the entire record, the court is left with the " 'definite and firm conviction that a mistake has been committed.' " *King County v. Boundary Review Bd.*, 122 Wn.2d 648, 661, 860 P.2d 1024 (1993) (quoting *Norway Hill Pres. & Prot. Ass'n v. King County*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)). A substantial evidence challenge will be sustained only where the challenger can demonstrate that there was not "evidence [in the record] in sufficient quantum to persuade a

fair-minded person of the truth of the declared premises." *Clausing v. State*, 90 Wn. App. 863, 871, 955 P.2d 394, *review denied*, 136 Wn.2d 1020 (1998).

*Issue 1: Does a hearing examiner have authority, under KCC 21A.44.040 and KCC 20.24.080B, to impose a condition of a conditional use permit that restricts the size of the applicant's work force without issuance of a new conditional use permit? If so, is such condition unduly burdensome to the District in the circumstances of this case?*

King County maintains that the hearing examiner had authority under King County Code (KCC) 21A.44.040 to impose Condition 10 for the purpose of mitigating traffic impacts, both those that resulted from expansion beyond that contemplated when the 1990 permit was granted and those likely to result from the expansion contemplated in the new application. KCC 21A.44.040 provides, in pertinent part, the following criteria that a hearing examiner must apply in reviewing a nonconforming use permit:

> E. The conditional use is not in conflict with the health and safety of the community;
>
> F. The conditional use is such that pedestrian and vehicular traffic associated with the use will not be hazardous or conflict with existing and anticipated traffic in the neighborhood[.]

KCC 20.24.080B authorizes hearing examiners to impose

> such conditions, modifications and restrictions as the examiner finds necessary to make the application . . . compatible with the environment and carry out . . . the regulations, policies, objectives and goals of the comprehensive plan, the community plans, subarea or neighborhood plans, the zoning code . . . and other official laws, policies and objectives of King County.

■ The District acknowledges that the King County Code grants hearing examiners the authority to mitigate traffic impacts, but argues that Condition 10 does not legitimately serve that goal.

The parties agree that *Gerla v. City of Tacoma*, 12 Wn. App. 883, 533 P.2d 416 (1975), states the appropriate test

for determining the validity of conditions placed on conditional use permits:

> To be valid, such conditions must (1) not offend any provision of the zoning ordinance, (2) not require illegal conduct on the part of the permitee, (3) be in the public interest, (4) be reasonably calculated to achieve some legitimate objective of the zoning ordinance, and (5) not be unnecessarily burdensome or onerous to the landowner.

*Id.* at 889.

Not inconsistent with *Gerla* is the general rule that a municipality may not impose conditions on land use permits that relate to the detailed conduct of the applicant's business rather than to zoning limitations on the use of the land. 3 ANDERSON'S AMERICAN LAW OF ZONING (Kenneth H. Young ed., 4th ed. 1996) § 21.32, at 821. A condition that regulates the conduct of the applicant's business may be annulled because such regulation is not the function of land use controls. *Id.* § 20.71, at 652.

■ As employees of an administrative agency created by the King County Council, hearing examiners have only the authority delegated to them by the Council. *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 558, 958 P.2d 962 (1998); *Chaussee v. Snohomish County Council*, 38 Wn. App. 630, 636, 689 P.2d 1084 (1984).

KCC 20.24.100 authorizes hearing examiners to "impose conditions, modifications and restrictions, including but not limited to setbacks, screenings in the form of landscaping or fencing, covenants, easements, road improvements and dedications authorized by county ordinances."

The parties have not found any published Washington case law that addresses the authority of local government to place limitations on the number of employees that can work on a nonconforming site, and neither have we. A somewhat analogous land use condition was addressed in *Schlosser v. Michaelis*, 18 A.D.2d 940, 238 N.Y.S.2d 433 (1963). There, the court found that permit conditions placed on an applicant that limited a wholesale florist business to a maximum of 11 employees, restricted the hours of opera-

tion to no earlier than 7:30 A.M. nor later than 6:30 P.M. with further restrictions on weekends, and limited the number and tonnage of trucks that could be stored outside the premises were improper, even though the local zoning ordinance granted the broad authority to impose such conditions and safeguards deemed appropriate to "preserve and protect the spirit and objectives" of the zoning ordinance. *Schlosser*, 238 N.Y.S.2d at 434. The *Schlosser* court invalidated the conditions, stating:

> [T]he Board of Appeals has no power to impose conditions which apply to the details of operation of the business . . . [or] to impose standards, requirements or conditions which are not set forth in the zoning ordinance.
>
> . . . The business would still be operated as a wholesale florist business whether there were eleven employees or twenty-one, or whether it was operated after 2 P.M. on Saturdays or not, etc.

*Id.* at 434-35 (citations omitted).

The District argues that, similarly to the conditions imposed in *Schlosser*, Condition 10 impermissibly regulates the manner in which the District will perform its activities inside its buildings, rather than mitigating the impacts of the activities on the surrounding properties. We disagree.

Unlike the condition in *Schlosser*, Condition 10 does not limit the number of permanent employees the District may employ but only the number it may employ on site without applying for a new conditional use permit. The obvious zoning purpose of requiring a new permit at such time as the District may need to expand its work force at the site beyond 35 permanent employees is so that the impact on surrounding properties from significant increases in traffic can be identified and mitigated in advance of such expansion. The traffic study is based on the assumption of 35 permanent employees on the site, and the safety measures that may be required as a result of that study likely will need to be reviewed at such time as the District may need to expand its work force further.

Moreover, such persuasive value as *Schlosser* might oth-

erwise have had is undermined by the lack of any significant analysis in support of the conclusion reached. One cannot ascertain from the opinion what zoning applied to the land in question, i.e., whether it was in a quiet residential neighborhood or an area zoned for certain kinds of business use other than storage warehouses. All that can be ascertained is that granting the application would require a variance. The judge who concurred in the result believed that only the first condition relating to the number of employees did not meet the requirement that the condition imposed must bear a reasonable relationship to the grant of the special permission sought, but again there is no explanation of why the concurring judge thought this was so. *Id.* at 435 (Hopkins, J., concurring in the result). Neither the majority nor the concurring opinion explains any such legitimate zoning purpose as the board may have thought justified the conditions. It is thus difficult to evaluate the *Schlosser* court's reasoning, and impossible to compare the facts of that case to those in this appeal.

We do observe that the same court subsequently upheld a restriction on the number of dogs that could be maintained by a commercial dog kennel operating in a residential zone. *See Town of Huntington v. Sudano*, 42 A.D.2d 791, 346 N.Y.S.2d 582 (1973), *aff'd*, 35 N.Y.2d 796, 321 N.E.2d 549 (1974). There, the kennel owner had kept up to 45 dogs at the kennel, in spite of a condition limiting the number of dogs to 10. In response to a contention that the decision in *Schlosser* controlled, the *Sudano* court said:

> Nor do we believe that the board acted in excess of its power because the condition incidentally affected the operation of a business. The regulation of a kennel traditionally has been effectuated by a zoning ordinance; and the regulation may include the limitation on the number and age of dogs permitted. This case is unlike [*Schlosser*] where the board attempted to restrict the number of employees and other details of the operation of a wholesale florist. Here, the number of dogs allowed is directly allied to the use and enjoyment of neighboring land.

*Sudano*, 346 N.Y.S.2d at 584 (citations omitted).

Applying *Gerla*, we conclude that the hearing examiner did not act in excess of his authority by requiring the District to apply for a new conditional use permit before expanding site employment beyond 35 permanent employees. The Department granted the permit without benefit of a traffic study, apparently failing to recognize that the District had expanded its work force far beyond the level contemplated at the time of the grant of the 1990 permit so that the relevant inquiry was not only the traffic impact from the District's current plan for expansion but also the traffic impact from its unregulated expansion over the preceding 10 years. The District has not assigned error to the examiner's conclusion that this was so.

In the absence of a traffic study the examiner was unable to analyze whether the level of site-generated vehicle traffic had been adequately identified and whether vehicle safety was already impaired along the Woodinville-Duvall Road where the District's driveways and that of Ms. Kelson all coexisted within approximately 500 feet of road frontage. Rather than to simply deny the permit or delay granting it until a traffic study could be completed, the examiner granted the permit subject to complementary conditions related to the traffic study and the number of site employees. By this means, the examiner sought to ensure the validity of the traffic study for its intended purpose—that being to mitigate traffic impacts that had already happened during the period of unregulated growth as well as the additional impacts that could be expected to occur as a result of the expansion.

It is apparent from the record that the 35-site employment figure was not drawn from thin air. Rather, it took into account the District's own projections with respect to additional employees likely to be hired in the ensuing 10 years—together with a cushion in case the District needed to hire up to double that number.

The District has not assigned error to the examiner's findings and conclusions with respect to the need for the traffic study, with respect to the necessary parameters of

the study—including impacts from previous unregulated growth as well as projected growth—nor even to the examiner's determination that the study should utilize site trip generation data based on 35 site employees. In reviewing a nonconforming use permit, the examiner must determine whether the conditional use is in conflict with the health and safety of the community and whether pedestrian and vehicular traffic associated with the use will be hazardous or conflict with existing and anticipated traffic in the neighborhood. KCC 21A.44.040. To that end, the examiner may impose such conditions, modifications and restrictions as the examiner finds necessary to make the application compatible with the environment and carry out the regulations, policies, objectives and goals of the zoning code, comprehensive plans, and neighborhood plans. KCC 20.24.080B. Condition 10 together with the condition relating to the traffic study are clearly complementary provisions designed to ensure that the conditional use is not and will not become in conflict with the health and safety of the community nor with existing and anticipated traffic in the neighborhood during the operation of the 1999 conditional use permit. There is no misapplication of law to the facts here, and the examiner did not exceed his authority granted by the King County Code.

The District also fails to demonstrate how Condition 10 in conjunction with the condition related to the traffic study fails to pass muster under the *Gerla* requirement that conditions must be reasonably calculated to achieve some legitimate objective in the zoning ordinance. *Gerla*, 12 Wn. App. at 889. Indeed, ensuring that unregulated growth will not outstrip the measures designed to mitigate impacts of the proposed expansion of a nonconforming use is a legitimate zoning objective.

Neither do we deem it unnecessarily burdensome or onerous to a landowner to require that a new permit be acquired before the landowner expands its operations or workforce beyond the level contemplated when a previous permit was issued. *See Gerla*, 12 Wn. App. at 889 (to be

valid such conditions must not be unnecessarily burdensome or onerous to the landowner). The hearing examiner was mindful of the District's concern that its future employment needs are difficult to predict in that its customer base is determined by development authorized by other governmental bodies and its employment needs can vary dramatically based on state and federal laws and regulations. No doubt that is why the examiner provided the District with a cushion of double the number of employees it anticipated hiring during the ensuing 10 years.

The District's argument could be compelling if Condition 10 placed a permanent restriction on the number of site employees the District could hire in the future. But it does not. It merely restricts the number that can be employed on site without a new permit. The permit process enables the county and the neighbors to address such conditions as may be required to measure and mitigate impacts from future expansion of the District's nonconforming use—and to address those matters in advance of such expansion, rather than after a period of unregulated growth such as happened in this case between 1990 and 1999. Condition 10 was imposed for that reason, and only that reason.

In sum, we reject the District's contention that the hearing examiner exceeded his authority or improperly applied the law to the facts of this case. And we also reject the notion that Condition 10 in anywise intrudes into the District's management decisions or otherwise unnecessarily burdens the District.

*Issue 2: Is the condition of the permit that restricts the applicant's workforce to 35 employees without a new permit supported by substantial evidence?*

The District argues that Condition 10 is not supported by substantial evidence. The District argues that there is no evidence to support the conclusion that 35 is the maximum number of people the District may employ without creating an additional traffic hazard. While that is true, the 35-employee figure isn't tied to some arbitrary determination that 35 is the maximum number that can safely be em-

ployed at the site. Rather, its purpose is to ensure the validity of the traffic study that is to be based on that number of permanent site employees. And that number in turn provides for double the number of new employees that the District projected it would need in the ensuing 10 years. Although the examiner could have selected some other number—37, perhaps—the 35-employee figure is supported by substantial evidence in that it takes into account both the District's own projections of employment growth over a 10-year period and it also takes into account the fact that it is difficult for the District to accurately project its employment needs due to circumstances beyond its control.

The District argues that because it must submit a traffic study that the county will review, and because the District will have to comply with conclusions reached in the study as a condition of obtaining a building permit, the 35-employee restriction is redundant, and therefore not supported by substantial evidence. The District overlooks the fact that the traffic study, which it does not challenge in any way, is based on the assumption of 35 permanent site employees, and that at such time as the District may need to expand its work force beyond that number, a new application is justified in order to determine whether traffic mitigation is still sufficient. Condition 10 is not redundant in view of the condition relating to the traffic study. Rather, the two conditions are designed to operate in tandem.

The District argues that the examiner's finding that the major impediment to the validity of the traffic study would be the potential for unlimited future expansion of employment on the site is unfounded because the district's employees will be limited by the number of parking stalls on the site and by the size of the buildings on the site. But the District does not challenge the examiner's finding that the permit granted in 1990 was based on conditions that were imposed at that time based on the District's representations to the county that it needed space for 16 employees and that it needed 27 parking stalls—and yet by 1999, 29 employees worked on site and the District had built 9 additional

parking stalls—all without benefit of a new permit. Moreover, the District had failed to implement various conditions imposed in 1990 that were designed to mitigate the impact of the District's nonconforming use on its neighbors. The examiner also found, based on testimony in the record, that the District's unregulated expansion of its operations and failure to comply with conditions imposed when the 1990 permit was granted had adversely affected property values in the neighborhood. The District does not challenge any these findings. A fair-minded trier of fact could reasonably infer, based on this unchallenged evidence, that specific steps needed to be taken to ensure that unregulated growth of District operations at this site did not again outpace the mitigating effect of conditions placed on authorized expansion. Moreover, as the county points out, inadequate parking on site does not necessarily equate with restricted growth of employment. More likely, employees unable to find parking on site would simply park somewhere else in the neighborhood, reducing vehicular traffic not one whit, and increasing pedestrian traffic along the already crowded Woodinville-Duvall Road.

The District argues nevertheless that it is not the number of site employees that causes traffic impacts, rather, it is the number of vehicles that the employees use to travel to and from work. The District points out that employees can carpool to work, telecommute, or use public transportation, without creating any additional traffic hazards. Condition 10 applies regardless of whether the permanent site employees are part time or full time. Therefore, under Condition 10, the District is prohibited from hiring more than 35 permanent employees at the site without a new permit, even if the District were to choose to use part-time employees with staggered work schedules so that employees work on different days. Job-sharing arrangements where one employee works Monday, Wednesday, and Friday and another works Tuesday and Thursday, or where one employee works in the morning and another works in the afternoon, would also be precluded without a new permit if the District

already employed 34 employees.

We can readily agree that by these means the District could employ more than 35 employees without creating any additional traffic hazards over and above those identified and mitigated by means of the traffic study—assuming of course that it could enforce requirements that all but 35 of its permanent employees utilize car pools or public transportation as opposed to driving their own vehicles to and from work. But as we have repeatedly pointed out, Condition 10 does not prohibit the district from employing more than 35 site employees. It merely requires that the District apply for a new conditional use permit before doing so. It is not our task to determine whether the hearing examiner could have devised a better means of achieving legitimate zoning goals related to traffic impacts than that contained in Condition 10 together with the complementary condition related to the traffic study. Rather, it is our task to determine whether the decision being challenged is supported by substantial evidence viewed in light of the record as a whole as set forth in RCW 36.70C.130(1). Finding that it is, we reject the contention that Condition 10, read as it must be in conjunction with the condition related to the traffic study, is not supported by substantial evidence in light of the record as a whole.

Affirmed.

WEBSTER and BAKER, JJ., concur.